**EL PASO HEALTHCARE SYSTEM, LTD., Appellant,**

v.

**PIPING ROCK CORPORATION, Appellee.**

No. 08–95–00262–CV.

Court of Appeals of Texas, El Paso.

Jan. 9, 1997.

Rehearing Overruled Feb. 5, 1997.

David C. Mattka, Munsch Hardt Kopf Harr & Dinan, P.C., Dallas, for Appellant.

L. Randall Lee, Richard, Lee, Rowley, Cobb & Hall, El Paso, for Appellee.

Before BARAJAS, C.J., LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a jury verdict on multiple causes of action arising out of a partnership agreement. We affirm in part and reverse and remand in part.

### FACTS

In 1989, El Paso Healthcare System, Ltd., ("EPHS") sought to develop a medical office building on property it owned adjacent to Sun Towers Hospital. After some unsuccessful attempts to develop and obtain financing for the project, EPHS sought the assistance of appellee Piping Rock Corporation, a developer experienced in the construction of medical office buildings. On December 13, 1989, EPHS and Piping Rock entered into a limited partnership agreement (the "Agreement") for the purpose of construction and ownership of the proposed office building. Piping Rock, as the general partner, controlled 51 percent of the partnership and EPHS, as the sole limited partner, controlled the other 49 percent. The Agreement provided that Piping Rock would execute an agreement to purchase the land for the proposed building from EPHS and then contribute the land to the partnership as its capital contribution. For its contribution, EPHS agreed to execute a Build and Lease Agreement under which it would lease all of the office space from the partnership upon completion of the building.

The Agreement required Piping Rock to obtain and close for the partnership a nonrecourse short-term construction loan no later than April 1, 1990. The construction loan was to fund all costs of building construction. Piping Rock had the option to terminate the partnership without liability if the construction loan and the purchase of the land were not accomplished by April 1, 1990. The construction was to be completed no later than April 1, 1991. Piping Rock never obtained the construction loan, nor did it close the land purchase contract. After attempting for about a year to complete the project despite the lack of financing, EPHS terminated the relationship with Piping Rock on May 22, 1991. EPHS completed the construction, and eventually sold the completed building. Piping Rock did not receive any of the proceeds of the sale.

Piping Rock filed suit against EPHS alleging breaches of the Agreement, fraud, intentional interference with contract, promissory estoppel, and breach of an alleged oral agreement subsequent to the partnership Agreement. EPHS counterclaimed against Piping Rock for breach of the Agreement, fraudulent inducement, negligent misrepresentation, intentional interference with contract and breach of fiduciary duty. The jury found that Piping Rock breached the Agreement and intentionally interfered with EPHS's contract to sell the medical office building, but found no damages for EPHS on either cause of action. The jury found for Piping Rock on its promissory estoppel claim, and awarded $440,000 in damages for Piping Rock's developer overhead and $48,-000 in costs for clearing a "staging area" next to the construction site. The jury failed to find for either party on any other cause of action.

### Evidentiary Sufficiency: Promissory Estoppel

In its first, second, fifth, sixth and seventh points of error, EPHS challenges the legal and factual sufficiency of the evidence to support the jury's finding of promissory estoppel and reliance damages in Piping Rock's favor. In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951); *Neily v. Aaron,* 724 S.W.2d 908 (Tex.App.—Fort Worth 1987, no writ); *see generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515 (1991).

A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d at 660; *Worsham Steel Co.,* 831 S.W.2d at 81. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (Tex.1951); *Reynolds v. Kessler,* 669 S.W.2d 801, 807 (Tex. App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Clark v. National Life & Accident Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820, 821 (Tex. 1947); *Oechsner v. Ameritrust Texas, N.A.,* 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).

### Applicable Substantive Law

Although promissory estoppel is normally a defensive theory, it may be asserted by a plaintiff as an affirmative ground for relief. *Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 707 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Under the doctrine of promissory estoppel, a promise may be binding if the promisor should reasonably expect that the promise will induce action or

forbearance, the promise does in fact induce such action or forbearance, and the enforcement of the promise is necessary to avoid injustice. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex. 1972); *Adams,* 754 S.W.2d at 707. If, however, a valid contract between the parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract. *See Guaranty Bank v. Lone Star Life Ins. Co.,* 568 S.W.2d 431, 434 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). Thus, a successful promissory estoppel plaintiff generally must prove: (1) a promise; (2) foreseeability that the promisee would rely on the promise; and (3) substantial reliance by the promisee to his detriment. *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). In this case, because the Agreement constituted a contract between the parties, Piping Rock additionally had to prove that the promise on which it relied to its detriment was outside the Agreement. EPHS challenges the legal and factual sufficiency of the evidence to support each of these elements.

### Summary of the Relevant Evidence

◼ The evidence at trial is uncontradicted that Piping Rock did not obtain a construction loan on or before April 1, 1990. Piping Rock thus had the option to end the partnership without liability at that time. The parties nevertheless continued to work on the project together. Each party claims that the other induced it to continue. EPHS presented evidence that it allowed Piping Rock to stay on the project because Piping Rock continually represented that it was close to closing a construction loan. EPHS asserted that it agreed to temporarily fund construction costs after April 1, 1990 not because it wanted to induce Piping Rock to complete the project without financing, but in reliance and anticipation on forthcoming financing. Essentially, EPHS argues that the revised construction financing was merely a modification or extension of the original term requiring Piping Rock to obtain financing by April 1, 1990. The Agreement, however, required any amendment altering it, specifically including any alteration of EPHS's financial obligations, to be in writing. There is no

such written amendment in the record leaving the door open for the jury to determine that the altered construction financing arrangement was a new promise rather than a modification of the original Agreement. In that vein, Piping Rock presented evidence that after April 1, 1990, EPHS asked Piping Rock to continue with the construction even though there was no loan in place and agreed to fund the construction costs, including Piping Rock's costs, in order to complete the project. Several Piping Rock requests to EPHS, dated after April 1, 1990, for payment of significant construction costs incurred, including Piping Rock's developer overhead, provide evidence that Piping Rock relied to its detriment on EPHS's promise to pay construction costs.

We find the evidence sufficient to support the jury's verdict under both a legal and factual sufficiency standard. Piping Rock presented evidence that despite its contractual ability to end the relationship without liability, it remained and expended significant funds on the project because EPHS agreed to pay the interim costs of construction. The promise, and Piping Rock's actions in reliance on it, were clearly outside both parties' contractual responsibilities under the original Agreement. Although EPHS presented evidence that it merely allowed, rather than induced, Piping Rock to stay on the project in reliance on Piping Rock's promises of forthcoming financing, the jury was free to reject that evidence and resolve any conflict in Piping Rock's favor. *See Oechsner,* 840 S.W.2d at 136. We therefore find the evidence sufficient to support the jury's finding that Piping Rock relied to its detriment on promises EPHS made outside the Agreement. Although a different jury on a different day may have reached a contrary conclusion, the evidence in favor of this verdict constitutes much more than a scintilla. We do not find this jury's verdict to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we overrule EPHS's first, second, fifth, sixth and seventh points of error.

### Application of the Statute of Frauds

◼ In its third point of error, EPHS contends that even if it made promises out-

side the Agreement, any such promise would be barred by the Statute of Frauds. We disagree. In this case, the relevant promise was clearly for services: constructing the medical office building in the absence of a construction loan in return for payment of expenses as they accrued. The Texas Statute of Frauds requires that any agreement which cannot be performed within one year from its date be in writing and signed by the party obligated to perform. TEX.BUS. & COM. CODE ANN. § 26.01(b)(6)(Vernon 1987). Where the time for performance of a contract is uncertain and performance can conceivably occur within one year, the statute of frauds does not apply. *Leon Ltd. v. Albuquerque Commons Partnership*, 862 S.W.2d 693, 701 (Tex.App.—El Paso 1993, no writ). The performance required in this case, completion of the construction, conceivably could have occurred within one year. In fact, there was testimony that the parties contemplated completion of the project by April 1, 1991, one year after the April 1, 1990 financing deadline. Because performance in this case could conceivably have occurred within one year, the Statute of Frauds is inapplicable. Accordingly, we overrule EPHS's third point of error.

### Unclean Hands

■ In its fourth point, EPHS alleges the doctrine of unclean hands bars Piping Rock from recovery on its promissory estoppel claims. EPHS points to the jury's findings that Piping Rock breached the original Agreement and that Piping Rock interfered with EPHS's contracts to sell the medical office building to support its assertion. It is undisputed that Piping Rock failed to obtain financing as required in the Agreement. A party may not predicate an estoppel in his favor on, or assert such estoppel for the purpose of making effective, obtaining the benefit of, or shielding himself from the results of his own fraud, and, similarly, he may not do so with respect to his own dereliction of duty, violation of law, wrongful act, or other inequitable conduct in the transaction in question. *El Paso Nat'l Bank v. Southwest Numismatic Inv. Group, Ltd.*, 548 S.W.2d 942, 949 (Tex.Civ.App.—El Paso 1977, no writ). In this case, however, Piping

Rock is not seeking to enforce favorable provisions of the contract the jury found it had breached. Rather, Piping Rock is seeking to enforce promises EPHS allegedly made outside the Agreement. As already set out in our discussion of EPHS's evidentiary sufficiency challenges, there is evidence in the record sufficient to determine that EPHS's promises were made to induce Piping Rock to remain on the project despite any breach. We do not believe that an equitable unclean hands defense should be based on the very breach EPHS essentially excused by making the subject promises in order to keep Piping Rock on the job. Finding that enforcing Piping Rock's equitable promissory estoppel claims in this context does not offend equity, we overrule EPHS's fourth point.

### Damages

■ In its eighth point, EPHS argues that the jury's damage award is excessive because it clearly exceeded the amount Piping Rock testified was outstanding and unpaid. The jury awarded Piping Rock $440,000 for "developer overhead" and $48,000 for costs incurred to clear a "staging" area next to the construction site. EPHS asserts that most of the expenses awarded were actually incurred prior to Piping Rock's failure to obtain a construction loan on April 1, 1990. Since the parties were operating under the Agreement until at least that date, EPHS contends the majority of damages the jury awarded are not appropriately attributable to Piping Rock's reliance on any extra-contractual promises.

It appears to be undisputed that Piping Rock incurred the demolition costs for the "staging area" after April 1, 1990. The evidence on reliance damages in the form of developer overhead, on the other hand, is somewhat murky. Tom Anderson, secretary-treasurer of Piping Rock, testified to damages at trial. Anderson claimed that on the project as a whole, Piping Rock spent a total of $550,000 attributable to developer's overhead for which it was never paid. Anderson also admitted that developer overhead costs are typically "heavily weighted" to spending during the preconstruction phase. A January 14, 1991 billing to EPHS, howev-

er, showed only $108,000 in developer overhead incurred as of December 31, 1990, over eight months after the April 1, 1990 financing deadline. Anderson further admitted that the billing might not indicate costs as actually incurred, because lenders preferred to see billings in even increments. Construction bills therefore sometimes "level" expenses so that they appear evenly throughout the project. Anderson concluded that 75 percent of the originally budgeted $468,000, or $351,000, in developer overhead would adequately compensate Piping Rock for its unpaid developer overhead expenses.[1]

Applying the factual and legal sufficiency standards set forth in our discussion of the preceding points, we find the evidence sufficient to support a jury award anywhere between the $351,000 Anderson requested and the $550,000 he testified was actually incurred less the $108,000 we know to have been incurred up to December 31, 1990.[2] The jury's actual award of $440,000 is within that range. It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit*, 150 Tex. at 273, 239 S.W.2d at 792; *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). We therefore find that the evidence is sufficient to support the jury's award of damages to Piping Rock for developer overhead and demolition costs undertaken in reliance on EPHS's extra-contractual promise. As such, the amount is not manifestly unjust. Accordingly, we overrule EPHS's eighth point of error.

### EPHS's Affirmative Claims

In its ninth and tenth points of error, EPHS challenges the legal and factual sufficiency of the evidence to support the jury's finding that EPHS did not suffer any damages resulting from Piping Rock's breach of the Agreement. Although the jury found that Piping Rock breached the Agreement, it also found "0" for each damage question related to the breach. Keeping in mind the legal and factual evidentiary standards we have already stated, we turn to a summary of the evidence relevant to EPHS's claimed damages.

EPHS presented evidence that it incurred $1,440,000 in increased construction costs due to Piping Rock's failure to obtain financing by April 1, 1990. We find no evidence in the record directly contradicting EPHS's delay-related expenses. Similarly, we find no evidence directly contradicting EPHS's testimony that it lost slightly more than $292,000 in patient revenue due to construction delays. There is also, however, undisputed evidence that EPHS completed the project on its own and sold the building for $18,500,000. The record establishes that EPHS spent $11,750,000 to complete the building and $4,400,000 on finishing to tenant specifications for a total of $16,150,000. EPHS had an additional $2,000,000 in interest costs for a grand total of $18,150,000 in building costs.

Although Piping Rock would have essentially owned 51 percent of the building under the Agreement, it is undisputed that Piping Rock received nothing out of the sale. Thus, the jury might reasonably have concluded that the proceeds from the sale, which included what would have been Piping Rock's 51 percent share under the Agreement, adequately compensated EPHS for any increased construction costs and lost profits Piping Rock's breach may have caused. Under the circumstances, it would be rational for the jury to conclude that EPHS received 51 percent of the building it otherwise would not have owned, and that this additional equi-

1. EPHS points to several other expense categories Piping Rock admitted were incurred prior to April 1, 1990, such as architectural expenses. The jury, however, failed to award Piping Rock reliance damages for anything other than developer overhead and demolition costs despite a question inviting them to do so.

2. The January 14 bill for expenses incurred through December 31, 1990 appears to be the bill in this record closest in time to April 1, 1990.

There is no testimony in the record establishing exactly when Piping Rock began making expenditures pursuant to EPHS's promise to pay expenses in the absence of construction financing. December 31, 1990 therefore is the only established date after which the jury could be sure that billed expenses were incurred in reliance on any EPHS promise to pay expenses as incurred after Piping Rock failed to obtain financing by April 1, 1990.

ty at the expense of Piping Rock effectively mitigated EPHS's damages. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). We do not find the jury's verdict to be against the great weight and preponderance of the evidence. Accordingly, we overrule EPHS's ninth and tenth points of error.

### Attorney's Fees

In its eleventh point of error, EPHS challenges the trial court's failure to award it attorney's fees. Prior to the jury verdict, the parties stipulated on the record that Piping Rock incurred $195,000 in reasonable attorney's fees and EPHS incurred $295,000 in reasonable attorney's fees. The trial court included the following statement in the judgment:

> By stipulation and agreement of the parties, the fact issues of amounts, reasonableness and necessity of legal fees incurred and to be incurred by the parties in connection with the claims and transactions at issue were not submitted to the jury but were stipulated and dictated into the record, and the rights of the parties to recovery of such attorneys' fees were reserved for decision by the Court based upon the jury verdict.

Based on the agreement, the trial court awarded Piping Rock the full amount of its stipulated attorney's fees in the final judgment. EPHS bases its claim to attorney's fees on two grounds: a directed verdict in EPHS's favor on a declaratory judgment claim and the jury's finding that Piping Rock breached the Agreement.

■ At the outset, we note that awarding of attorney's fees in any declaratory judgment is solely at the discretion of the trial court. *McLendon v. McLendon,* 862 S.W.2d 662, 672–73 (Tex.App.—Dallas 1993, writ de-

nied). The trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1986). EPHS makes no argument that the trial court abused its discretion or that the failure to award fees under the declaratory action was inequitable or unjust. As such, we reject that portion of EPHS's argument.

■ Section 38.001 of the Civil Practice and Remedies Code, however, provides for the recovery of reasonable attorney's fees "in addition to the amount of a valid claim and costs" on a claim based upon an oral or written contract. Tex.Civ.Prac. & Rem.Code Ann. § 38.001(8)(Vernon 1986). The jury's finding of zero damages does not preclude an award of attorney's fees under the statute. *See Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 450–51 (Tex.App.—Texarkana 1993, writ denied), *opinion on remand,* 893 S.W.2d 686 (Tex.App.—Texarkana 1995, no writ). In this case, the jury found that Piping Rock breached the Agreement. It is undisputed that Piping Rock did not obtain the construction loan by the April 1, 1990 deadline as required in the Agreement. The jury's verdict is thus supported by the evidence presented at trial. The jury further found that the breach was not excused.[3] In light of the parties' stipulation and the jury finding of an unexcused breach, we find that EPHS was entitled to attorney's fees and the trial court erred in failing to award any attorney's fees to EPHS.

■ Piping Rock argues that this court cannot award EPHS the total amount of its stipulated attorney's fees because the stipulated total covers all three trial defendants, of whom only EPHS is an appellant, and all of EPHS's causes of action, some of which do not provide for recovery of attorney's fees. We agree. Accordingly, pursuant to the parties' agreement to reserve decision on attorney's fees to the trial court, we remand this issue to the trial court for appropriate findings on, and award of, attorney's fees. *See*

---

**3.** Attorney's fees issue, Piping Rock argues the jury's failure to find that Piping Rock was excused from performance is against the great weight and preponderance of the evidence and is manifestly unjust, therefore, EPHS should not recover attorney's fees. Piping Rock, however, fails to provide any argument or record references in support of its allegation. We therefore decline to consider the argument.

*Atlantic Richfield Co.*, 860 S.W.2d at 451 (appellate court should not usurp fact finding function of the trial court).

### *Piping Rock's Cross–Points*

Piping Rock raises two cross-points attacking the jury's findings that EPHS did not breach the Agreement, and that EPHS did not breach a subsequent agreement to provide financial backing for a construction loan. In both points, Piping Rock alleges that the findings are against the great weight and preponderance of the evidence and manifestly unjust. Piping Rock has waived both of its cross-points. Under the Texas Rules of Civil Procedure, a motion for new trial is a prerequisite to an appellate complaint of factual insufficiency of the evidence to support a jury finding or a complaint that a jury finding is against the overwhelming weight of the evidence. TEX. R.CIV.P. 324(b)(2), (3). The record does not reflect that Piping Rock filed a motion for new trial. In fact, Piping Rock filed a motion for entry of judgment on the jury verdict, including the findings of which it attempts to complain on appeal. The court of appeals will not consider cross-points where the party did not object to the judgment or otherwise except to it. *See Delhi Gas Pipeline Corporation v. Lamb,* 724 S.W.2d 97 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *Illey v. Hatley,* 693 S.W.2d 506 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Piping Rock has waived its complaints. Accordingly, we overrule Piping Rock's two cross-points.

### *CONCLUSION*

Having considered and overruled all but one of the parties' points and cross-points of error, we affirm the judgment of the trial court with the exception of the trial court's failure to award EPHS attorney's fees. Having sustained EPHS's eleventh point, we remand the cause to the trial court for proceedings on the award of attorney's fees not inconsistent with this opinion.