TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00789-CV






Janice Bailey, Renee Villeneuve, Michael Moon, Tom R. Cox, Wendy J. Foxworth,


Kathryn Janes, Mary Ann Hubbard, and Kasey Smith, Appellants




v.




The City of Austin, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 94-07318, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING 







 The main issue presented is whether Proposition 22, which amended the City of
Austin's city charter by referendum, violates the equal protection provisions of the Texas
Constitution. Appellants Janice Bailey, Renee Villeneuve, Michael Moon, Tom Cox, Wendy
Foxworth, Kathryn Janes, Mary Ann Hubbard, and Kasey Smith sued the City of Austin
complaining that Proposition 22 violates the Texas Constitution and the Texas Insurance Code,
and that the City was also liable under breach of contract and promissory estoppel. The district
court granted summary judgment in favor of the City after both parties filed motions for summary
judgment. Appellants bring four issues on appeal. We will affirm in part and reverse and remand
in part the district court's summary judgment.


BACKGROUND


 At all relevant times, Bailey, Moon, Janes, and Hubbard were City employees, and
Villeneuve, Cox, Foxworth, and Smith were their respective partners. Appellee is a municipality
incorporated in the state of Texas. The City has traditionally offered life, health, and dental
insurance plans to its employees, their spouses, and their dependent children as part of the benefits
package it provides its employees. At issue is the health insurance: the City offers two HMOs
and one self-funded plan ("City plan"). The City generally oversees and negotiates the HMO
insurance plans for its employees; it administers and manages the City plan, much like a private
insurance company. The City disseminates information and collects premiums which it deducts
from the employee's paychecks for all three plans. The City pays an employee's premiums if she
elects to be covered under the City plan; it pays only a portion if the employee is covered under
either HMO. If an employee elects to extend health coverage to an eligible dependent, the City
pays a portion of the dependent's premium due under any of the offered plans.

 Sometime in 1993, the City Council of the City was urged to extend insurance
benefits to "domestic partners" (1) of City employees. The Human Resources Department gathered
extensive information by contacting private employers and other cities regarding the costs and
advantages of domestic partner benefits. Experts concluded that insurance rates would not be
affected because there was no evidence that domestic partners constitute a "high-risk, high-cost
group." The City gave several reasons for its decision to offer domestic partners benefits: (1)
to implement policies and programs that are fair and equitable; (2) to maintain and recruit quality
employees; and (3) to provide adequate medical coverage for employee dependents. On
September 2, 1993, the City Council approved a change to the City's personnel policy that defined
eligible dependent to include "domestic partner," thereby extending health benefits to all domestic
partners and their children. The City notified its employees that domestic partner benefits would
be available. During the limited open-enrollment period, an employee could enroll her domestic
partner under any of the health insurance plans. To qualify, the employee and partner had to file
with the Travis County Clerk's office a formal Declaration of Domestic Partnership which
requires the parties to attest to an emotionally committed relationship of mutual caring, mutual
residency, joint responsibility for basic living expenses, and that no other partnership or marriage
had existed in the last six months.

 Although the projected cost was originally over $500,000 for the 1993-94 fiscal
year, the actual cost at the end of the enrollment period was just over $100,000 for the fiscal
year. (2) When coverage began in January 1994, one hundred employees had signed up to receive
domestic partner benefits; seventy-one of those employees enrolled an opposite-sex partner and
twenty-nine enrolled a same-sex partner. Among its enrollees were employee Moon and his same-sex partner Cox, and employee Bailey and her same-sex partner Villeneuve. Employee Janes and
her same-sex partner Foxworth were waiting for six months to elapse with the intention to file a
declaration of domestic partnership. Employee Hubbard and her same-sex partner Smith were
denied domestic partner benefits after the passage of Proposition 22.

 Proposition 22 passed by a majority vote on May 7, 1994. It amends Austin's city
charter to provide:


 City employee benefits shall be as provided in the approved "Personnel
Policies"; provided such City employee benefits shall in no case be extended to any
persons other than an employee's parents, spouse, children (including step-children, children for whom a court ordered guardianship or conservatorship has
been assigned, qualified children placed pending adoption, and eligible
grandchildren), sisters, brothers, grandparents, and the parents and grandparents
of an employee's spouse; except as otherwise provided in state or federal law and
the term spouse as defined in the "Personnel Policies" shall mean the husband or
wife of the employee.



(Emphasis added). On May 17, 1994, the City informed its employees that benefits for domestic
partners and their children were terminated effective May 9. Appellants filed suit in district court
alleging that the proposition was unconstitutional and in violation of the Texas Insurance Code, (3)
and that the City was liable to pay domestic partner benefits under a contract theory or in the
alternative, under promissory estoppel. Both parties filed motions for summary judgment. The
district court denied appellants' motion and granted appellee's motion on unstated grounds. 
Appellants come now appealing the district court's judgment.


STANDING

 The City contends that several of the appellants have no standing. To have standing
the pleader must allege facts that affirmatively demonstrate the court's jurisdiction to hear the
cause. Texas Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). 
When the trial court does not order a dismissal for want of jurisdiction, we consider standing for
the first time on appeal. Id. Therefore, an appellate court should construe the petition in favor
of the party, and if necessary review the entire record to determine if any evidence supports
standing. Id. The general test for standing requires (1) a real controversy between the parties (2)
that will be determined by the relief sought. Id. In other words, a plaintiff must assert some
restriction of its own rights, not someone else's. See Texas Workers' Compensation Comm'n v.
Garcia, 893 S.W.2d 504, 518 (Tex. 1995).

 In their second amended petition, appellants allege as fact that: (1) Bailey, Moon,
Hubbard, and Janes are or were City employees; (2) Villeneuve, Cox, Smith, and Foxworth are
their respective domestic partners; (3) Bailey and Moon applied for and received benefits that
were terminated; (4) Hubbard applied for benefits that were refused to her; (5) Janes intended to
apply for benefits that were subsequently terminated; and (6) all appellants sought declaratory
judgment and injunctive relief declaring Proposition 22 and the City's conduct unconstitutional
and in violation of certain statutes, and actual damages suffered due to the termination of benefits. 
Although the City claims that Moon and Janes never applied for or were eligible for benefits, the
facts alleged as to Moon reveal otherwise. Additionally, Moon responded in an interrogatory that
he applied for these benefits and that coverage was in effect until revoked by Proposition 22. As
to Janes, the facts alleged are that she intended to apply but was waiting the required six months
to qualify for domestic partnership status. Her responses to certain admissions reveal that (1) she
accepted employment with the City relying on the promised domestic partner coverage, and (2)
she left employment with the City because of the termination of partner benefits. Construing the
record in favor of standing, we conclude that all appellants have asserted a restriction of their own
rights and have demonstrated that between all appellants and the City a real controversy exists that
can be determined by appellants' request for declaratory judgment, injunction, and damages.


STANDARD OF REVIEW

 Generally upon review of a summary judgment, a court determines whether the
movant has shown that no genuine issue of material fact exists and that it is entitled to judgment
as a matter of law. See Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548 (Tex. 1985). When both parties move for summary judgment and the trial court
grants one motion and denies the other, the appellate court should determine all questions
presented. See Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988). In the instant case, both
parties moved for summary judgment on three of appellants' five causes of action. (4) Thus, both
agree that a summary judgment appropriately decides: (1) whether Proposition 22 violates the
equal protection clause of the Texas Constitution; (2) whether Proposition 22 violates the
impairment of contracts clause of the Texas Constitution; and (3) whether Proposition 22 and the
City's withdrawal of domestic partner benefits violates the unfair discrimination provision of the
Texas Insurance Code. When reviewing a summary judgment granted on general or unstated
grounds, we consider whether any theories set forth in the motion will support the summary
judgment. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 
Appellants also brought a breach of contract claim and a promissory estoppel claim. The City
moved for summary judgment on both claims. Unless an exception exists not applicable here, a
defendant seeking summary judgment based on a plaintiff's inability to prove the case must
conclusively disprove at least one element of the plaintiff's cause of action. See Lear Siegler, Inc.
v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).


DISCUSSION

Equal Protection

 Appellants assert that Proposition 22 violates the equal protection guarantees of the
Texas Constitution. Article I, section 3 of the Texas Constitution provides:


 All free men, when they form a social compact, have equal rights, and no
man, or set of men, is entitled to exclusive public emoluments, or privileges, but
in consideration of public services.



Tex. Const. art. I, § 3. Article I, section 3a provides:



 Equality under the law shall not be denied or abridged because of sex, race,
color, creed, or national origin. This amendment is self-operative.



Tex. Const. art. I, § 3a (1972). The Texas Constitution must not provide less protection than that
mandated by the federal constitution; it may provide additional rights. Davenport v. Garcia, 834
S.W.2d 4, 15 (Tex. 1992). Equal protection decisions recognize that a state cannot function
without classifying its citizens for various purposes and treating some differently than others. See
Sullivan v. University Interscholastic League, 616 S.W.2d 170, 172 (Tex. 1981). The equal
protection clause requires only that those who are similarly situated be treated equally. See
Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985); Whitworth v. Bynum, 699 S.W.2d
194, 197 (Tex. 1985). We review a law passed directly by voters with the same scrutiny we
review a law passed by the legislature. See Cleburne, 473 U.S. at 448.

 We must first decide exactly what classification is being challenged. Appellants
all have same-sex domestic partners; they assert that Proposition 22 discriminates against them
on the basis of their sexual preference, against homosexuals as a class. However, Proposition 22
facially excludes the class of all domestic partners, heterosexual and homosexual, from the
definition of a dependent eligible for employee benefits. The proposition itself does not facially
discriminate against homosexuals as a class.

 "The proper classification for purposes of equal protection analysis is not an exact
science, but scouting must begin with the statutory classification itself. Only when it is shown
that the legislation has a substantial disparate impact on classes defined in a different fashion may
analysis continue on the basis of the impact of those classes." Califano v. Boles, 443 U.S. 282,
293-94 (1979) (incidental and speculative categorization of illegitimate children not sufficient to
treat denial of insurance benefits to unwed mothers as discrimination against illegitimate children;
classification for analysis was statutory class of unwed mothers); see Schweiker v. Wilson, 450
U.S. 221, 231 (1981) (incidentally denying benefit to mentally ill insufficient to consider statute
as classifying on basis of mental health as alleged); Lake Orange Assocs. v. Kirkpatrick, 21 F.3d
1214, 1224 (2d Cir. 1994) (substantial disproportionate impact on one of several groups required). 
The statistical evidence reveals that out of the one hundred employees who signed up for domestic
partner benefits, seventy-one had opposite-sex partners and twenty-nine had same-sex partners;
thus, homosexual couples were not the only group affected by the passage of Proposition 22. See
Schweiker, 450 U.S. at 230 (taking into account evidence that in addition to alleged class other
groups were equally deprived). Appellants claim that the proposition disproportionately impacts
the class of homosexuals because they cannot enter into a legal marriage. See Tex. Fam. Code
Ann. § 2.001(b) (West 1998) ("A license may not be issued for the marriage of persons of the
same sex."). When a valid Texas statute denies a discrete group of citizens the right to legally
marry, we cannot but conclude that homosexual employees are disproportionately burdened by
a law that makes benefits contingent upon marriage. In other words, under Proposition 22, all
homosexual employees with domestic partners are deprived of benefits for their partners while
only a portion of heterosexual employees with domestic partners, those who choose not to marry,
are similarly deprived of benefits. (5)

 Evidence of a disproportionate burden alone, however, is not enough to warrant
analysis under the alleged classification rather than the statutory classification. See Arlington
Heights v. Metro Housing Corp., 429 U.S. 252, 265 (1977) (disproportionate impact not
irrelevant but neither is it "sole touchstone"). Evidence of an intent to classify on the basis of the
alleged class is also necessary. See Schweiker, 450 U.S. at 233-34 (without evidence of
congressional intent to classify on basis of mental health, court would review on basis of statutory
classification); Boles, 443 U.S. at 294 (reviewing claim under statutory classification without
further evidence of discriminatory purpose); Lake Orange Assocs., 21 F.3d at 1225 (evidence of
legislative motive to classify on the basis of minority race necessary to apply strict scrutiny to
facially neutral statute); Austin v. Berryman, 955 F.2d 223, 228 (4th Cir. 1992) (evidence that
neutral statute was motivated by gender-based discrimination necessary to apply intermediate
scrutiny) (citing Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 274 (1979)).

 Appellants point to several newspaper articles in the record as evidence of intent
to discriminate against homosexuals. We have thoroughly scrutinized the record. The summary-judgment evidence reveals little about the intent underlying the passage of Proposition 22. The
proposition was favored by over 50,000 voters. There is no evidence in the record nor could
there be evidence demonstrating the intent of 50,000 individual voters. The record contains
several newspaper articles regarding domestic partner benefits, Proposition 22, and the subsequent
lawsuit by appellants. From these articles, we discern that (1) domestic partner benefits were
encouraged by local supporters as "much more than a gay and lesbian issue, because many
domestic partners come from heterosexual relationships" (Dianne Hardy-Garcia, Austin
Lesbian/Gay Political Caucus co-chairwoman); (2) a group called Concerned Texans sponsored
the petition to amend the City Charter with Proposition 22; their campaign manager stated, "we
think a lot of people are not happy that the city is using their tax money to fund domestic partners'
insurance . . . a lot of people think it is inherently wrong from a moral perspective"; (3) the City
Council had no choice about placing the proposition on the ballot; and (4) Concerned Texans
encouraged other groups to oppose a tax abatement for an Apple computer facility because the
company offers benefits to "unmarried partners of employees." While domestic partner benefits
may have been supported by gay and lesbian groups, they benefitted unmarried heterosexual
couples as well. Although some proponents of Proposition 22 were undoubtedly motivated by
animus against homosexuals, there is evidence that others were offended by the City's extending
benefits to unwed heterosexual partners as well. There is not sufficient evidence to conclude that
the underlying intent behind the passage of Proposition 22 was to discriminate against the narrow
class of homosexuals as opposed to the broader class of all unmarried partners. Accordingly, we
hold the classification at issue consists of all unmarried domestic partners.

 The general rule is that when the classification created by the governmental scheme
neither infringes on fundamental rights or interests nor burdens an inherently suspect class, equal
protection analysis requires that the classification be rationally related to a legitimate state interest. 
See Sullivan, 616 S.W.2d at 172 (citing Parham v. Hughes, 441 U.S. 347, 350-53 (1979)). 
Proposition 22 classifies those who may and those who may not be considered eligible dependents
for purposes of health insurance. The United States Supreme Court has determined that the right
to welfare benefits is not a fundamental right. See, e.g., Boles, 443 U.S. 282; Dandridge v.
Williams, 397 U.S. 471 (1970). Appellants cite no cases nor have we found any suggesting that 
the right to health insurance benefits is a fundamental right. Additionally, neither domestic
partners nor unmarried partners constitutes a suspect class requiring strict scrutiny. See James
v. State, 772 S.W.2d 84, 92 (Tex. Crim. App.), remanded for consideration on other grounds,
493 U.S. 885 (1989) (citing Califano v. Jobst, 434 U.S. 47, 53-54 (1977) (marital status is not
suspect classification)).

 Thus, the pertinent inquiry is whether excluding unmarried domestic partners from
the category of dependents eligible for employee benefits advances legitimate legislative goals in
a rational fashion. See Schweiker, 450 U.S. at 234. Although this rational-basis standard is "not
a toothless one," Matthews v. Lucas, 427 U.S. 495, 510 (1976), the reviewing court may not
substitute its notions of good public policy for those of the legislature or the public. Proposition
22 will pass constitutional muster unless the "varying treatment of different groups or persons is
so unrelated to the achievement of any combination of legitimate purposes that we can only
conclude that the [voters'] actions were irrational." Vance v. Bradley, 440 U.S. 93, 97 (1979). 
Legislative classifications must be upheld "if any state of facts can be conceived that will sustain"
them. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911); see, e.g., Vance, 440 U.S.
93; Lens Express, Inc. v. Ewald, 907 S.W.2d 64, 69 (Tex. App.--Austin 1995, no writ). It is
constitutionally irrelevant whether the plausible reason for the governmental action in fact
underlies the legislation; the Supreme Court has never insisted that a legislative body articulate
its reasons for enacting a statute. See U.S. Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 179 
(1980). This is particularly true where the legislature must necessarily engage in a process of
line-drawing. See Garcia, 893 S.W.2d at 524. Even less can the populace at large be expected
to articulate its rationale for a popular vote.

 The City suggests that saving on the cost of administering a benefits package is a
legitimate governmental interest. It asserted in oral argument that the City would save $100,000
by excluding domestic partners from insurance benefits. We recognize the City has a valid
interest in preserving the fiscal integrity of its programs. See Shapiro v. Thompson, 394 U.S.
618, 633 (1969). It may legitimately attempt to limit its expenditures, whether for public
assistance, public education, or any other program such as health insurance. But "a State may
not accomplish such a purpose by invidious distinctions between classes of its citizens. It could
not, for example, reduce expenditures for education by barring indigent children from its
schools." Id. (party required to do more than show that denying welfare benefits to new residents
saves money). Without any other goal, the City could legitimately deny benefits to employees
with dark hair because it always saves money to deny benefits to any group. Cutting costs may
justify drawing lines, but it does not justify where lines are drawn. Equal protection demands that
even limited financial resources be rationally allocated so that individuals in like circumstances
are treated with parity. Furthermore, Proposition 22 expands the class of eligible dependents and
allows the City, if it so chooses, to partially cover the cost of a premium for an employee's
parents, grandparents, siblings, spouse, spouse's parents and grandparents, and every conceivable
type of legal relationship to a child. Proposition 22 in no way saves the City money by increasing
the class of permissible dependents the City may choose to fund. In order to find Proposition 22
constitutional, we must ascertain another legitimate state interest. (6)

 Proposition 22 limits to whom the City may extend benefits: an employee, an
employee's spouse, parents, grandparents, children (of various legal or future legal relationships),
sisters, brothers, and parents and grandparents of an employee's spouse. By defining spouse as
husband or wife, it excludes all domestic partners. Thus, in the language of the proposition, a
legitimate governmental interest is discernable: recognizing and favoring legally cognizable
relationships such as marriage. Under both the federal and state constitution, the freedom to
marry is recognized as a fundamental right. See Loving v. Virginia, 388 U.S. 1 (1967). Justice
Marshall reaffirmed the importance of this right in Zablocki v. Redhail: "[s]urely, a decision to
marry and raise the child in a traditional family setting must receive equivalent protection [to the
right to seek an abortion]." 434 U.S. 374, 386 (1978). Were we considering the government's
interest in free speech, we would not hesitate to conclude the government has a legitimate interest
in recognizing and favoring such a fundamental right. Similarly, if an individual's right to
marriage is of fundamental importance then the state has a legitimate interest in recognizing the
marriage relationship. Such an interest must extend by nature to other family relationships created
by law such as adopted children, court-appointed guardian, and conservator. The law generally
recognizes family relationships created by consanguinity. See, e.g., Tex. Prob. Code Ann. § 38
(West 1980). In Texas, the Family Code recognizes familial relationships by granting rights to
and imposing obligations on spouses, parents, and grandparents. See Tex. Fam. Code Ann.
§§ 4.02, 4.031, 41.001-.003, 151.003, 153.431-.434 (West 1993 & Supp. 1998). We hold the
government has a legitimate interest in recognizing and favoring legally cognizable family
relationships including the legal relationship of marriage. (7) See Roe II v. Butterworth, 958 F. Supp
1569, 1582 (S.D. Fla. 1997), aff'd, 129 F. 3d 1221 (11th Cir. 1997), cert. denied, 1998 USLX
(1998) (protecting institutions of marriage and family is legitimate government purpose); see also
Hodgson v. Minnesota, 497 U.S. 417, 446 (1990) (state has legitimate interest in creation and
dissolution of marriage contract); Trimble v. Gordon, 430 U.S. 762, 769 (1977) ("no one disputes
the appropriateness of the state's concern with the family unit"); Wright v. Metrohealth Med. Ctr.,
58 F.3d 1130 (6th Cir. 1995), cert. denied, 116 S. Ct. 1041 (1996) (Ohio has express public
policy favoring marriage). Because Proposition 22 allows the City to provide benefits to an
employee's legal spouse and other persons in a cognizable family relationship with an employee,
it advances the government's legitimate interest in recognizing and favoring such relationships. 
The classifications drawn by Proposition 22 are substantially related to a legitimate goal and not
so attenuated as to render the distinctions arbitrary or irrational. See Cleburne, 473 U.S. at 446.

 This Court properly exercises only a limited review power over the public when
it engages in the democratic process and makes choices among alternative solutions to social and
economic problems. In Schweiker, Justice Blackmun reiterated the importance of allowing the
democratic process to establish public policy:


 In the area of economics and social welfare, a State does not violate the
Equal Protection Clause and correspondingly the Federal Government does not
violate the equal protection component of the Fifth Amendment merely because the
classifications made by its laws are imperfect. If the classification has some 
"reasonable basis," it does not offend the Constitution simply because the
classification "is not made with mathematical nicety or because in practice it results
in some inequity."


 This inquiry employs a relatively relaxed standard reflecting the Court's
awareness that the drawing of lines that create distinctions is peculiarly a legislative
task and an unavoidable one. As long as the classificatory scheme chosen by
Congress rationally advances a reasonable and identifiable governmental objective,
we must disregard the existence of other methods of allocation that we, as
individuals, perhaps would have preferred.



Schweiker, 450 U.S. at 234 (Citations omitted). Thus, we may disagree with the wisdom of the
policy or the method of allocation, but we may not overturn a law unless its classification is so
irrelevant to a stated purpose that the distinctions drawn are clearly arbitrary. Under such a 
limited review, we hold that Proposition 22 is constitutional and not a violation of the equal
protection clauses of the Texas Constitution.

 Appellants argue that Romer v. Evans, a recent United States Supreme Court
decision, compels a decision that Proposition 22 is unconstitutional. 116 S. Ct. 1620 (1996). We
disagree. The amendment in Romer targeted a specific group--homosexuals--and prohibited all
legislative, executive, or judicial action at any level of state or local government from protecting
that class. The Court could find no rational relation between the target class and a legitimate state
purpose because the amendment was "at once too narrow and too broad" by identifying persons
by a single trait and then denying them protection across the board. Id. at 1627. The only
purpose the amendment had was "a bare desire to harm a politically unpopular group" which is
not a legitimate governmental purpose and therefore is forbidden by the constitution. Id. at 1628. 
The Colorado amendment was held unconstitutional because it denied a discrete group the ability
to participate in the political process. See id. at 1626-28.

 Similar circumstances do not exist here. We have already held there is no evidence
of an intent to discriminate, invidious or not, against the class of homosexuals with regard to the
passage of Proposition 22. The proposition does not target a group identifiable by a single trait,
such as sexual orientation, but rather targets all who choose domestic partners without the benefit
of marriage. Moreover, Proposition 22 deals only with employee benefits, not with access to
political and judicial redress. It classifies and excludes persons on the basis of marital status and
other legal relationships. Proposition 22 does not deny domestic partners the ability to seek future
political redress. It does not deny domestic partners--heterosexuals or homosexuals--the ability to
organize and reinstate domestic partner health benefits through the democratic process of initiating
a future petition to rescind Proposition 22. If a suspect class or a fundamental right is not
implicated we ask only, as did the Romer court, whether the statute is rationally related to a
legitimate purpose. The Romer court found the Colorado amendment advanced no legitimate
purpose. We must acknowledge, however, that Proposition 22 furthers the City's interest in
recognizing legal relationships including marriage; therefore, we hold it is rationally related to
a legitimate purpose.

 Appellants also point to the jurisprudence of two other states to support their equal
protection claim. In Tumeo v. University of Alaska, the Alaska court found that a university's
denial of health insurance coverage to its employees' domestic partners violated a state statute that
forbids discrimination on the basis of marital status. Case No. 4FA-94-43, 4 (Alaska Super. Ct.
1995). Texas has no statute that forbids discrimination on the basis of marital status. In a
Vermont decision, the Labor Relations Board of that state found that a university's refusal to
extend health benefits to its employees' same-sex partners violated the university's own binding
rule prohibiting discrimination on the basis of sexual orientation. Grievance of B.M. et. al.,
Docket No. 92-32, 1, 6 (Vt. Labor Relations Bd. 1993). Texas, by contrast, has no statute
forbidding discrimination on the basis of sexual orientation. Neither of the cited opinions
implicates the equal protection clause or aids the appellants' constitutional claims. We hold
Proposition 22 does not violate the equal protection clauses of the Texas Constitution and overrule
appellants' first issue.


Impairment of Contract

 Appellants claim Proposition 22 unconstitutionally impairs the City's contractual
obligations. Article I, section 16 of the Texas Constitution prohibits both laws impairing the
obligations of contracts and retroactive laws. Tex. Const. art. I, § 16. A statute is not retroactive
unless it can be shown that vested rights acquired under the existing law are taken away or
impaired. International Sec. Life Ins. Co. v. Maas, 458 S.W.2d 484, 490 (Tex. Civ.
App.--Houston [1st Dist.] 1970, writ ref'd n.r.e.) (citing McCain v. Yost, 284 S.W.2d 898 (Tex.
1955)). We find that neither a contract nor a vested right existed which could have been
impaired. A vested right under the Texas Constitution has been defined as a well-founded claim
that "means nothing more nor less than a claim recognized and secured by law." Texas Water
Rights Comm'n v. Wright, 464 S.W.2d 642, 648 (Tex. 1971) (quoting Mellinger v. City of
Houston, 3 S.W. 249 (Tex. 1887)).

 The City Personnel Policies handbook states in its introduction, "these policies are
not a legal contract." Furthermore, the City Benefits Guide which details the several benefits
available to employees gives the City the right to "change, amend, or modify the benefit plans and
contributions at any time." The Texarkana Court of Appeals has held that an employee policy
handbook or manual that sets forth benefits and policies does not constitute a binding contract 
unless the manual uses language clearly indicating an intent to do so. Gamble v. Gregg County,
932 S.W.2d 253, 255 (Tex. App.--Texarkana 1996, no writ). The employee handbook at issue
here expressly negates any intent to create a binding contract.

 Nor do appellants have a vested right in the benefits at issue; this Court has held
that an employee manual expressly giving the City discretion to terminate its employees does not
create a protected interest in continued employment. See Byars v. City of Austin, 910 S.W.2d
520, 524 (Tex. App.--Austin 1995, writ denied). (8) Likewise, we hold that a handbook which
expressly gives the City the right to amend or eliminate the health benefits offered does not create
a protected interest in those benefits; therefore, appellants do not have a claim recognized and
secured by law. Because the handbook did not create a contract or a vested right, we hold the
City has not impaired the obligation of contracts under the Texas Constitution. We overrule issue
number two.

 Appellants also sued the City under a breach of contract theory. Because we hold
no contract existed, summary judgment in favor of the City properly resolves this claim. We
overrule part B of issue four.


Unfair Discrimination

 Appellants claim that Proposition 22 violates the anti-discrimination provision of 
the Texas Insurance Code. At the time the benefits were offered and withdrawn, article 21.21 
prohibited unfair discrimination defined as:


 Making or permitting any unfair discrimination between individuals of the
same class and of essentially the same hazard in the amount of premium, policy
fees, or rates charged for any policy or contract of accident or health insurance or
in the benefits payable thereunder, or in any of the terms or conditions of such
contract or in any other manner whatever.



Act of May 23, 1989, 71st Leg., R.S., ch. 966, § 1, 1989 Tex. Gen. Laws 4043, 4044 (Tex. Ins.
Code § 4(7)(b) since repealed by Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex.
Gen. Laws 2988, 2998). The City asserts it is not an entity engaged in the business of insurance
even though it offers its employees a self-funded health insurance plan. Without deciding whether
the City is engaged in the business of insurance under the Insurance Code, we hold the relevant
provision is not applicable to these circumstances.

 Section 7(b) specifically applies to premiums, policy fees, and rates; it does not
address who or what the Code requires insurers to cover. Id. Furthermore, even if the phrase
"or in any other manner whatever" could be construed to apply to defining eligible dependents,
the Code only prohibits discrimination between individuals of the same class. We have already
held that in the present case the class excluded from health insurance consists of all domestic
partners. The Insurance Code does not require insurers to provide coverage for every conceivable
class and it permits them to distinguish between different classes for purposes of dependent
eligibility requirements. We hold the discrimination provision of the Insurance Code does not
apply to the instant case. We overrule appellants' issue number three.


Promissory Estoppel

 Lastly, appellants contend the district court erred in granting the City's motion for
summary judgment with respect to their promissory estoppel claim. Although promissory estoppel
is normally a defensive theory, it may be asserted by a plaintiff as an affirmative ground for relief. 
El Paso Healthcare Sys. Ltd. v. Piping Rock Corp., 939 S.W.2d 695, 698 (Tex. App.--El Paso
1997, writ denied); Donaldson v. Lake Vista Community Improvement Ass'n, 718 S.W.2d 815,
818 (Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.).

 We will first detail the procedural history to provide a clear background upon
which we make our analysis. Appellants' original petition alleged a promissory estoppel cause
of action. In response, appellee's motion for summary judgment addressed promissory estoppel,
contending that appellants do not have standing and that the City has governmental immunity. 
Appellants' cross-motion for summary judgment also appeared to address the promissory estoppel
claim; subsequent supplemental motions for summary judgment by both parties continued to raise
the promissory estoppel issue. Appellants contend the City is estopped as a matter of law, or in
the alternative that the claim be severed to proceed to trial. Appellants' second and final amended
petition failed to list promissory estoppel as a cause of action and to address the issue. (9) It seems
the absence was purely a literal mistake, rather than a failure to state a cause of action or an
intentional withdrawal of that cause of action. The record reveals that appellants continued to
raise promissory estoppel in supplemental summary-judgment briefs to the trial court and both
parties address estoppel on appeal to this Court. Appellee never sought a "no cause of action"
summary judgment on promissory estoppel or objected by special exception, and it does not now
contend that it is entitled to summary judgment for appellants' failure to state a cause of action. 
We will therefore treat appellants' issue on appeal as if they had correctly pleaded it in the court
below. See Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 494-95 (Tex. 1991) (holding
that unplead affirmative defense may serve as basis for summary judgment when raised in
summary-judgment motion and opposing party does not object because unplead claims or defenses
tried by express or implied consent of parties are treated as if they had been raised in pleadings);
Lewis v. Skippy's Mistake Bar, 944 S.W.2d 1, 5 (Tex. App.--Fort Worth 1996, no writ) (generally
improper to grant summary judgment on deficient pleading's failure to state cause of action when
deficiency can be attacked through special exception; defects in pleadings must appear to be
incurable by any amendment of pleadings).

 The City claims appellants are precluded from suing the City because it is protected
from liability by governmental immunity. Municipal corporations, like the City of Austin, are
traditionally afforded governmental immunity for performance of governmental functions. Gates
v. City of Dallas, 704 S.W.2d 737, 738 (Tex. 1986); see Dillard v. Austin Indep. Sch. Dist., 806
S.W.2d 589, 594 (Tex. App.--Austin 1991, writ denied) (governmental unit not subject to estoppel
when exercising governmental powers). On the other hand, when a municipal corporation
performs a proprietary function it is subject to the same duties and liabilities as those incurred by
private persons and corporations. Gates, 704 S.W.2d at 738; Dillard, 806 S.W.2d at 594-95
(estoppel may apply to municipality that exercises proprietary function). Governmental functions
are those public acts which the municipality performs "as the agent of the State in furtherance of
general law for the interest of the public at large." Gates, 704 S.W.2d at 738 (quoting City of
Crystal City v. Crystal City Country Club, 486 S.W.2d 887, 889 (Tex. Civ. App.--Beaumont 1972,
writ ref'd n.r.e.)). A proprietary function is one performed by a city, in its discretion, primarily
for the benefit of those within the corporate limits of the municipality rather than for use by the
general public. City of Gladewater v. Pike, 727 S.W.2d 514, 519 (Tex. 1987) (citing Gates, 704
S.W.2d at 739).

 In the present case, the City offers three health plans to its employees: a self-insured plan and two HMO plans administered by private insurers. The City solicits requests for
proposals and invitations for bids for procuring insurance coverage. It manages and administers
its own plan and oversees the HMO plans. The City also deducts premiums from its employees'
paychecks for all three plans. The City does not contend that it performs these acts for the general
public, nor can it be reasonably argued that such acts are in "furtherance of general law for the
interest of the public at large." City of Crystal City, 486 S.W.2d at 889. We conclude that the
City's function of offering, administering, and overseeing health care plans for its own employees
are proprietary functions. Such activities are not integral to its function as an arm of the state. 
See City of Houston v. Southwest Concrete Constr., Inc., 835 S.W.2d 728, 731 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). This holding comports with Texas law. See
Gates, 704 S.W.2d at 739 (entering into insurance contract with employee for self-insured plan
was proprietary function); see also Southwest Concrete Constr., Inc., 835 S.W.2d at 731
(administration of rehabilitation loan program); Josephine Abercrombie Interests, Inc. v. City of
Houston, 830 S.W.2d 305, 309 (Tex. App.--Corpus Christi 1992, writ denied) (administration of
block grant loan program to private developers). Strictly construing the doctrine of municipal
immunity against the municipality, see City of Gladewater, 727 S.W.2d at 519, we hold the City
does not have governmental immunity under these circumstances.

 Promissory estoppel allows a cause of action to a promisee who has acted to his
detriment in reasonable reliance on an otherwise unenforceable promise. See Cherokee
Communications, Inc. v. Skinny's, Inc., 893 S.W.2d 313, 317 (Tex. App.--Eastland 1994, writ
denied) (citing Wheeler v. White, 398 S.W.2d 93, 96-97 (Tex. 1965)). A promise may be binding
if the promisor should reasonably expect that the promise will induce action or forbearance, the
promisee substantially relies on the promise to his detriment, and enforcement of the promise is
necessary to avoid an injustice. See El Paso Healthcare v. Piping Rock Corp., 939 S.W.2d 695,
698-99 (Tex. App.--El Paso 1997, writ denied) (citing "Moore" Burger, Inc. v. Phillips Petroleum
Co., 492 S.W.2d 934, 937 (Tex. 1972)); Cherokee Communications, Inc., 893 S.W.2d at 317. 
"One, who by speech or conduct induces another to act in a particular manner should not be
permitted to adopt an inconsistent position, attitude, or course of conduct which causes loss or
injury to another." Donaldson v. Lake Community Improvement Ass'n, 718 S.W.2d 815, 818
(Tex. App.--Corpus Christi 1986, writ ref'd n.r.e.). Recoverable damages are only the amount
necessary to restore the injured party to the position the party would have been in absent action
in reliance on the promise. Id.

 The City claims there was no evidence of reliance, a promise made, or damages
incurred. (10) Summary judgment is proper for a defendant who establishes, as a matter of law,
there are no issues of material fact concerning one or more of the essential elements of the
plaintiff's cause of action. Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997). In reviewing the granting of a summary-judgment motion, we assume all evidence
favorable to the non-movant is true. See Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). 
We indulge every reasonable inference in favor of the non-movant and resolve any reasonable
doubt in its favor. See Science Spectrum, Inc., 941 S.W.2d at 911.

 In arguing there was no evidence of reliance, the City points us to certain
interrogatories and admissions. Specifically, it claims that all appellants answered "none" to the
question: "Please state all benefits you or your domestic partner applied for but were denied prior
to the election results regarding Proposition 22." (Emphasis added). We find, however, that the
answer "none" encompasses the whole question rather than just the first half of the inquiry as the
City attempts to imply; in other words, "none" merely indicates there were no benefits both
applied for and denied prior to Proposition 22. Additionally, there is some summary-judgment
evidence that (1) both Bailey and Moon applied for benefits and received coverage for their
domestic partners until Proposition 22 passed; (2) Janes expected domestic partner benefits as part
of her employment with the City because she had been informed of those benefits; and (3) Janes
quit because of the denial of such benefits. Finally, the summary-judgment evidence shows that
health benefits were available to all City employees' domestic partners for some period and that
they were terminated retroactively. The Personnel Policies handbook defines eligible dependent
to include domestic partner; the handbook also states, "[t]hese policies may be changed by the
City Council upon the recommendation of the City Manager, but no such changes will divest any
employee of rights accrued under these policies at the time of such change." (Emphasis added). 
It would not be unreasonable to rely on such a statement and assume that domestic partner
coverage would continue at least until the insurance policy expired regardless of any changes. 
The evidence raises an issue of material fact as to whether there was detrimental reliance. See
Hall v. Harris County Water Control & Improvement Dist. No. 50, 683 S.W.2d 863, 868 (Tex.
App.--Houston [1st Dist.] 1985, no writ) (reasonable reliance is generally question of fact). The
record also reveals that the City made it known to its employees that domestic partner health
benefits would be available. Based on the summary-judgment evidence, we cannot conclude that
appellee conclusively disproved any essential element of appellants' claim of promissory estoppel. 
We sustain part C of appellants' issue number four.


CONCLUSION

 Because the City did not violate the Texas Constitution or the Texas Insurance
Code, we affirm the summary judgment with respect to those causes of action. We further affirm
the summary judgment on the breach of contract claim as no valid contract existed. However,
the City did not conclusively disprove any element of appellants' promissory estoppel claim; we
therefore reverse and remand that portion of the judgment for further proceedings.



 
 Bea Ann Smith, Justice

Before Justices Powers, Kidd, and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: July 16, 1998

Publish

1. "Domestic partner" was defined as someone who lives in the same household, shares the
common resources of life in a close, personal, and intimate relationship with an employee, and
would not be prevented from marrying the employee because of age, consanguinity, or prior
undissolved marriage to another. In this context and as the term is commonly used, domestic
partners are unmarried.
2. This amount was based on the actual number of enrollees.
3. See Tex. Const. art. I, §§ 3, 3a, 16; Act of May 23, 1989, 71st Leg. R.S., ch. 966, § 1,
1989 Tex. Gen. Laws 4043, 4044 (Tex. Ins. Code § 4(7)(b) since repealed by Act of May 17,
1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988, 2998).
4. Appellants also originally brought a DTPA claim which is not at issue in this appeal.
5. Appellants argue that heterosexual couples can always marry. We find no evidence that
these heterosexual employees who elected domestic partner benefits would have or could have
married their partners. There may have been personal (religious or other) obstacles or even
contractual obligations preventing them from marriage.
6. The Supreme Court has been exact in articulating a legitimate state interest distinct from
preserving fiscal integrity in holding constitutional a statute that favors some while disfavoring
others. See, e.g., Califano v. Boles, 443 U.S. 282, 289 (1979) (regarding mother's insurance that
did not provide for illegitimate children and their mothers; "Congress could have reasonably
concluded that a woman who has never been married to the wage earner is far less likely to be
dependent upon the wage earner at the time of death"); Califano v. Jobst, 434 U.S. 47, 53-54
(1977) (regarding statute that cut off social security benefits to disabled adult who married but not
to disabled adult who married another disabled adult receiving benefits; "the [ ] amendment
reflects a legislative judgment that a marriage between two persons receiving benefits will not
normally provide either spouse with protection against economic hardship that would be
occasioned by the termination of benefits").


In both Boles and Jobst, the Court analyzed the equal protection claim under the assumption that
governmental entities work with limited resources which preclude them from providing unlimited
benefits. The Court however closely examined other state interests that would reasonably support
who received those benefits.
7. While we hold the recognition of a legal marriage is a legitimate state interest, we do not
comment on whether the prohibition on same-sex marriages is a fair or even a constitutional
policy. Appellants do not challenge its constitutionality here and do not suggest that the institution
of marriage itself (without reference to gender) is a denial of equal protection.
8. The very same City Personnel Policies handbook was at issue. 
9. An amended petition supercedes any previous petitions. See Tex. R. Civ. P. 65; Evans v.
Hoag, 711 S.W.2d 744, 746 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.).
10. We do not interpret this challenge as a "no-evidence motion" for summary judgment. Rule
166a(i) was not in effect when appellees filed their motions. See Order of April 16, 1997, 60
Tex. B.J. 534 (amending Tex. R. Civ. P. 166a, eff. Sept. 1, 1997); see also Pena v. Van, 960
S.W.2d 101, 105 (Tex. App.--Houston [1st Dist.] 1997, no pet.) (if defendant files motion for
summary judgment after September 1, 1997, new rule applies).


CONCLUSION

 Because the City did not violate the Texas Constitution or the Texas Insurance
Code, we affirm the summary judgment with respect to those causes of action. We further affirm
the summary judgment on the breach of contract claim as no valid contract existed. However,
the City did not conclusively disprove any element of appellants' promissory estoppel claim; we
therefore reverse and remand that portion of the judgment for further proceedings.



 
 Bea Ann Smith, Justice

Before Justices Powers, Kidd, and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: July 16, 1998

Publish

1. "Domestic partner" was defined as someone who lives in the same household, shares the
common resources of life in a close, personal, and intimate relationship with an employee, and
would not be prevented from marrying the employee because of age, consanguinity, or prior
undissolved marriage to another. In this context and as the term is commonly used, domestic
partners are unmarried.
2. This amount was based on the actual number of enrollees.
3. See Tex. Const. art. I, §§ 3, 3a, 16; Act of May 23, 1989, 71st Leg. R.S., ch. 966, § 1,
1989 Tex. Gen. Laws 4043, 4044 (Tex. Ins. Code § 4(7)(b) since repealed by Act of May 17,
1995, 74th Leg., R.S., ch. 414, § 11, 1995 Tex. Gen. Laws 2988, 2998).
4. Appellants also originally brought a DTPA claim which is not at issue in this appeal.
5. Appellants argue that heterosexual couples can always marry. We find no evidence that
these heterosexual employees who elected domestic partner benefits would have or could have
married their partners. There may have been personal (religious or other) obstacles or even
contractual obligations preventing them from marriage.
6. The Supreme Court has been exact in articulating a