No. 04-01-00663-CV



Karl P. RICHTER & RMS Monte Christo, L.L.C.,


Appellants



v.



WAGNER OIL COMPANY, et al.,


Appellees



From the 81st Judicial District Court, Atascosa County, Texas


Trial Court No. 99-10-0561-CVA


Honorable Olin B. Strauss, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: October 9, 2002


AFFIRMED

 Karl P. Richter ("Richter") and RMS Monte Christo, L.L.C. ("RMS") appeal a summary
judgment granted in favor of Wagner Oil Company, Caliborne L.P., 123 TEC Limited Partnership,
Wagner & Cochran, Inc., H.E. Patterson, Brent Talbot, Ernie Grodi, Stephen N. Clark, Dennis
Taylor, Mark Welsey Belcher, Duer Wagner, Jr., and Bryan C. Wagner (collectively the "Wagner
Defendants"). Richter and RMS generally contend that the trial court erred in granting summary
judgment in favor of the Wagner Defendants with regard to each of the following claims: (1) quantum
meruit; (2) breach of confidential relationship and constructive trust; (3) fraud and negligent
misrepresentation; (4) tortious interference with prospective contract; (5) breach of confidentiality
agreement; and (6) promissory estoppel. We affirm the trial court's judgment.

Background


 In February of 1998, Richter approached Duer Wagner & Co. ("Duer Wagner") about ideas
Richter had for a natural gas project involving Duer Wagner's reserves in the Jourdanton field in
South Texas. In March of 1998, Richter and Duer Wagner entered into a confidentiality agreement
to encourage Richter to disclose his ideas more fully. (1) At the same time, Duer Wagner was engaged
in efforts to sell its assets. After certain assets were sold, Bryan Wagner became the sole owner of
Duer Wagner and changed its name to Wagner Oil Company ("WOC"). The reserves in the
Jourdanton field were owned by Finley, Duer Wagner and Bryan Wagner, either individually or
through an entity owned by those individuals, and WOC operated the reserves.

 The parties disagree regarding the scope of Richter's project and whether it included a
proposal for joint reserve acquisition. In November of 1998, WOC and Richter met again to discuss
Richter's project. Around the same time, Richter and RMS agreed to engage in a joint effort to
acquire Exxon's reserves in the Jourdanton field. Richter contends that he contacted Bryan Wagner
and informed him that Exxon had informed RMS that it was the likely successful bidder for the Exxon
reserves. Ultimately, WOC acquired the Exxon reserves, and Richter and RMS sued the Wagner
Defendants asserting numerous causes of action.

Standard of Review


 The motions for summary judgment filed by the Wagner Defendants requested summary
judgment under both traditional and no evidence standards.

 Under traditional summary judgment standards, a party moving for summary judgment has
the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or
more essential elements of the plaintiff's cause of action. Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548-49 (Tex. 1985). If the defendant meets this burden, the plaintiff must then raise
a genuine issue of material fact on that element. Gonzalez v. City of Harlingen, 814 S.W.2d 109, 112
(Tex. App.--Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate
court accepts as true all evidence supporting the non-movant. Nixon, 690 S.W.2d at 549. All
inferences are indulged in favor of the non-movant, and all doubts are resolved in the non-movant's
favor. Id.

 We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment
as we apply in reviewing a directed verdict. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex.
App.--San Antonio 1998, pet. denied). We look at the evidence in the light most favorable to the
respondent against whom the summary judgment was rendered, disregarding all contrary evidence
and inferences. Moore, 981 S.W.2d at 269. A no-evidence summary judgment is improperly granted
if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of
material fact. Id. Less than a scintilla of evidence exists when the evidence is "so weak as to do no
more than create a mere surmise or suspicion" of a fact. Id. More than a scintilla of evidence exists
when the evidence rises to a level that would enable reasonable and fair-minded people to differ in
their conclusions. Id.

 Quantum Meruit


 Richter and RMS contend that the traditional summary judgment was improperly granted as
to the quantum meruit claim because the evidence raised fact issues with regard to whether: (1)
Richter provided valuable information to the Wagner Defendants; (2) the Wagner Defendants used
and/or benefitted from the information; and (3) Richter reasonably expected to be paid for the
information. Richter and RMS further contend that the no evidence summary judgment was improper
because evidence was presented to raise a fact issue with regard to whether: (1) no express contract
covered the services; (2) Richter furnished valuable services; and (3) Richter notified Wagner that he
expected to be compensated.

 Quantum meruit is an equitable theory of recovery which is based on an implied agreement
to pay for benefits received. Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41
(Tex. 1992). In order to recover under quantum meruit, the plaintiff must establish the following
elements: (1) valuable service was rendered or materials furnished, (2) to the party sought to be
charged, (3) which were accepted by the party sought to be charged, and (4) under such
circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid
by the recipient. Id. A party may recover under quantum meruit only when there is no express
contract covering the services or materials furnished. Vortt Exploration Co. v. Chevron U.S.A., Inc.,
787 S.W.2d 942, 944 (Tex. 1990).

 In their brief, Richter and RMS contend that Richter provided valuable information to the
Wagner Defendants in the form of: (1) Richter's project ideas to maximize the value of the Wagner
Defendants' reserves; and (2) the information that RMS was the likely successful bidder for the
Exxon reserves. With regard to Richter's project ideas, the confidentiality agreement expressly
covered the services furnished by Richter with regard to those ideas; therefore, summary judgment
was properly granted as to the quantum meruit claim with regard to Richter's project ideas. See Vortt
Exploration Co., 787 S.W.2d at 944. Since the confidentiality agreement only contemplated
information and ideas possessed by Richter when the agreement was executed, the information
regarding RMS's bid on the Exxon reserves was not covered by the agreement. (2)

 Viewing the evidence in accordance with the applicable standard of review, Richter stated in
his affidavit that he discovered from a representative at Exxon that RMS was the likely successful
bidder for the Exxon reserves. Richter stated that this information was extremely valuable
information. Richter disclosed the information to WOC in connection with a possible joint acquisition
arrangement. David Sykes, RMS's CFO, stated in his affidavit that RMS was informed that Exxon
considered it to be the successful bidder. Sykes also stated that the information was confidential and
valuable. In addition, James Finley testified that information regarding the status of a company's
efforts in the bidding process to sell its reserves would be valuable information. This evidence is
sufficient to raise a genuine issue of material fact with regard to whether Richter provided the Wagner
Defendants with a valuable service in notifying Wagner of RMS's status as the likely successful
bidder. (3)

 With regard to whether the Wagner Defendants used the information, Richter stated in his
affidavit that when he contacted Bryan Wagner and informed him that RMS's bid was likely
successful, Wagner told him that "he had knowledge that Exxon did not like RMS and that he would
'go get in the middle of that deal.'" Richter further stated that Wagner did not inform him that WOC
was already negotiating with Exxon. In addition, Henry Edwin Bright, an Exxon employee
responsible for handling Exxon's sale of its reserves, testified in his deposition that he believed
Wagner first contacted Exxon expressing an interest in the reserves in the mid-November time frame,
but he was not absolutely certain regarding the date. Richter's affidavit, coupled with Bright's
deposition testimony, is sufficient to raise a genuine issue of material fact with regard to whether the
Wagner Defendants accepted or used the information.

 The final element is whether Richter notified Wagner that he expected to be paid. Richter
stated in his affidavit that he disclosed the information regarding RMS's bidding status to Wagner to
determine whether WOC wanted to jointly pursue the acquisition. An expectation of a future
business advantage or opportunity cannot form the basis of a quantum meruit claim. Peko Oil USA
v. Evans, 800 S.W.2d 572, 576 (Tex. App.--Dallas 1990, writ denied). The Wagner Defendants
moved for summary judgment on this element on both traditional and no evidence grounds. Richter
stated that he disclosed the information to Wagner to determine if WOC wanted to jointly pursue the
acquisition; therefore, the information was disclosed in expectation of a possible future business
opportunity. Richter relies on a conclusory statement in his affidavit that he expected to be
compensated; however, even if we accept the statement as evidence, the statement read in context
relates to an expectation of compensation for the initial disclosures made based on the confidentiality
agreement, not the information regarding RMS's bidding status. In discussing the disclosure of
RMS's bidding status in his affidavit, Richter expressly states that he made the disclosure to
determine if WOC would be interested in joint reserve acquisition - a future business opportunity.
Therefore, summary judgment was properly granted as to Richter's service in providing the Wagner
Defendants with information relating to RMS's bid status because no evidence was introduced to
show that Richter expected to be paid for the information.

Confidential Relationship/Constructive Trust


 Richter and RMS contend that summary judgment was improper as to the breach of
confidential relationship claim because a confidential relationship existed between the parties.

 Courts do not recognize confidential relationships lightly. Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 288 (Tex. 1998). To impose such a relationship in a business
transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the
suit. Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997). The fact that one
businessman trusts another and relies on another to perform a contract does not give rise to a
confidential relationship, because something apart from the transaction between the parties is
required. Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594-95 (Tex.
1992); see also Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., 48 S.W.3d 865,
882 (Tex. App.--Houston [14th Dist.] 2001, pet. denied) (failing to find confidential relationship
between geologist and oil company). Although the existence of a confidential relationship is
ordinarily a question of fact, where there is no evidence to establish the relationship, it is a question
of law. Exxon Corp. v. Breezevale Ltd., 2002 WL 501092, at *10 (Tex. App.--Dallas Apr. 4, 2002,
no pet.); Chapman Children's Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 439 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied).

 Although Richter and RMS presented summary judgment affidavits stating that the nature of
the oil and gas industry requires the customary imposition of confidential relationships, these
statements are contrary to the established law with regard to when a confidential relationship arises
in a business transaction. In this case, the evidence conclusively established that no relationship
existed between Richter and the Wagner Defendants before the confidentiality agreement was
executed. Therefore, no relationship existed prior to and apart from the confidentiality agreement.
Accordingly, summary judgment was properly granted with regard to the claim for breach of a
confidential relationship.

Fraud and Negligent Misrepresentation


 Richter contends that the Wagner Defendants misrepresented that they were actively engaged
in reserve acquisition at the time the confidentiality agreement was executed and was interested in
pursuing additional opportunities. Richter claims he was damaged because he would not have
disclosed the information regarding RMS's bidding status to the Wagner Defendants absent the
confidentiality agreement and that this information enabled WOC to acquire the Exxon reserves,
preventing Richter and RMS from acquiring the reserves.

 Reliance is an element of fraud and negligent misrepresentation. See Formosa Plastics Corp.
USA v. Presidio Eng's and Contractors, 960 S.W.2d 41, 47 (Tex. 1998); Larsen v. Carlene
Langford & Assocs., Inc., 41 S.W.3d 245, 249 (Tex. App.--Waco 2001, pet. denied). The Wagner
Defendants moved for a no evidence summary judgment on the element of reliance. The only damage
Richter claims to have incurred as a result of the alleged misrepresentation was the lost opportunity
to acquire the Exxon reserves. However, if Richter discovered that the representation was false
before disclosing RMS's bidding status, Richter could not reasonably rely on the alleged
misrepresentation. See John Wood Group USA, Inc. v. ICO, Inc., 26 S.W.3d 12, 24 (Tex.
App.--Houston [1st Dist.] 2000, pet. denied). 

 Richter's affidavit stated that he discovered that Duer Wagner was engaged in selling its
reserves before entering into discussions with RMS regarding the acquisition of the Exxon reserves.
In addition, Richter's affidavit stated that in November of 1998, he learned that WOC was again
engaged in reserve acquisition, and that he contacted Wagner to propose a joint acquisition of the
Exxon reserves. Even assuming that Duer Wagner misrepresented that it was engaged in asset
acquisition at the time the confidentiality agreement was executed, Richter knew that the
representation was false before providing Wagner with the information regarding RMS's bidding
status. Therefore, he could not have relied on the alleged misrepresentation in disclosing that
information to Wagner.

Tortious Interference with Prospective Contract


 Both Richter and RMS asserted a claim for tortious interference with prospective contract.
The trial court granted summary judgment against RMS's claim based on the Wagner Defendants'
First Amended Motion for Summary Judgment. The trial court granted summary judgment against
Richter's claim based on the Wagner Defendants' Motion for Final Summary Judgment. The two
motions asserted different grounds for summary judgment.

 To prevail on a claim of tortious interference with prospective business relations, the plaintiff
is required to establish: (1) a reasonable probability the plaintiff would have entered a contractual
relationship with a third-party; (2) an intentional and malicious act that intervened with the formation
of that relationship; (3) the defendants lacked privilege or justification to interfere; and (4) actual
damage, loss, or harm resulted from the defendant's interference. See Milam v. National Ins. Crime
Bureau, 989 S.W.2d 126, 131 (Tex. App.--San Antonio 1999, no pet.).




 RMS's claim


 In their First Amended Motion for Summary Judgment, the Wagner Defendants only asserted
two grounds for summary judgment: (1) Richter was not RMS's agent; and (2) WOC's purchase of
the Exxon reserves was a bona fide exercise of its own rights.

 With regard to whether Richter was acting as RMS's agent, Richter's affidavit stated:

 During my efforts to acquire the Exxon reserves, I entered discussions with RMS
Monte Christo, L.L.C. ("RMS"). Ultimately, RMS and I agreed to jointly pursue the
Exxon Reserves. As part of this arrangement, I understood that I would act on behalf
of RMS in my dealings with third-parties (such as WOC) concerning the Exxon
Reserves. I further understood that RMS would act on my behalf and represent me
in its dealings with Exxon concerning the Exxon Reserves.


Similarly, Reiner W. Klawiter, who was the manager of RMS, stated in his affidavit:


 During the time that RMS was bidding on the Exxon Reserves but before I became
aware that Exxon considered RMS to be the likely successful bidder of the Exxon
Reserves, RMS and Richter entered discussions concerning joint acquisition of the
Exxon Reserves. Ultimately, RMS and Richter agreed to jointly pursue the Exxon
Reserves. As part of this agreement, RMS agreed that it would act as Richter's agent
and representative in its dealings with Exxon concerning the Exxon reserves. RMS
and Richter further agreed that Richter would act as RMS's agent and representative
in his dealings with any third-parties (such as WOC) in his dealings concerning the
Exxon Reserves. It was after this Agreement became effective that RMS learned that
Exxon considered RMS to be the likely successful bidder on the Exxon Reserves.


These affidavits are sufficient to raise a genuine issue of material fact as to whether Richter was
RMS's agent.

 With regard to the justification contention, the justification defense is based on either the
exercise of (1) one's own legal rights; or (2) a good faith claim to a colorable legal right, even though
the claim ultimately proves to be mistaken. Texas Beef Cattle Co. v. Green, 921 S.W.2d 203, 211
(Tex. 1996). The motivation behind the assertion of a legal right to interfere with a contract is
irrelevant. Id. Improper motives cannot transform lawful actions into actionable torts. Id.

 "[W]hen two parties are competing for interests to which neither is entitled, then neither can
be said to be more justified or privileged in his pursuit." Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d
711, 727 (Tex. 2001). "If the conduct of each is lawful, neither should be heard to complain that
mere unfairness is actionable." Id. In this case, both WOC and RMS/Richter were competing for
the right to purchase the Exxon reserves; however, neither was entitled to be declared the successful
bidder. Accordingly, WOC's purchase of the Exxon reserves was a bona fide exercise of its own
rights.

B. Richter's claim

 In their Motion for Final Summary Judgment, the Wagner Defendants moved for summary
judgment as to Richter's claim for tortious interference with prospective contract on the following
grounds: (1) Richter was not RMS's agent; (2) no prospective contract existed between RMS and
Exxon; (3) WOC did not intentionally or maliciously interfere with any contract; (4) WOC was
justified in purchasing the Exxon Reserves. Richter only addresses the first and fourth grounds in his
brief; therefore, he has waived any complaint that summary judgment was improper based on the
second and third grounds asserted in the motion. See Morriss v. Enron Oil & Gas Co., 948 S.W.2d
858, 871(Tex. App.--San Antonio 1997, no writ).

Breach of Confidentiality Agreement


 The elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff
performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was
damaged as a result of the breach. Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.,
48 S.W.3d 225, 235 (Tex. App.--San Antonio 2001, pet. denied). The recitals to the confidentiality
agreement state that Richter "is in possession of certain information, data, and ideas regarding
possible transactions pertaining to certain transactions in various counties located in South Texas
which he has acquired at considerable expense." Under the agreement, Duer Wagner agreed not to
use any of Richter's proprietary information, data, or ideas for any purpose other than to consider
and evaluate the project. As previously noted in regard to the quantum meruit claim, since the
confidentiality agreement only contemplated information and ideas possessed by Richter when the
agreement was executed, the information regarding RMS's bid on the Exxon reserves was not
covered by the agreement.

 One of the no evidence grounds asserted by the Wagner Defendants in response to the breach
of confidentiality agreement claim is that there is no evidence that any confidential information
provided by Richter pursuant to the agreement was used. In their brief, the only information Richter
and RMS claim that the Wagner Defendants used was the information provided by Richter regarding
RMS's likely successful bid status. However, Richter was not "in possession" of that information
when the confidentiality agreement was executed; therefore, the agreement did not preclude the
Wagner Defendants from using the information regarding RMS's bid status. Accordingly, any use
of that information could not have resulted in a breach of the agreement.

Promissory Estoppel


 The elements of promissory estoppel include: (1) a promise; (2) foreseeability of reliance
by the promisor; and (3) substantial reliance by the promisee to his detriment. English v. Fischer,
660 S.W.2d 521, 524 (Tex. 1983). Promissory estoppel is not applicable to a promise covered by
a valid contract between the parties; however, promissory estoppel will apply to a promise outside
the contract. El Paso Healthcare System, Ltd. v. Piping Rock Corp., 939 S.W.2d 695, 699 (Tex.
App.--El Paso 1997, writ denied). The promise by Duer Wagner to not use information disclosed
by Richer is set forth in the confidentiality agreement. Therefore, promissory estoppel is not
applicable. Although the information regarding RMS's bidding status is was not in Richter's
possession at the time the agreement was executed, Richter does not allege any independent promise
not to disclose that information independent of the promise contained in the confidentiality
agreement.

Conclusion


 The trial court's judgment is affirmed.


 PHIL HARDBERGER, 

 CHIEF JUSTICE


PUBLISH


1. The agreement also contained a covenant not to compete, but Richter abandoned all claims relating to the
enforcement of the covenant.
2. The recitals to the agreement note that Richter was then in possession of information, and the agreement
stated that Richter "is disclosing" the information to Wagner pursuant to the agreement. The contemplated information
must have existed on the date of the agreement in order to be disclosed pursuant to its terms.
3. The Wagner Defendants allude to the possibility that the testimony that RMS was contacted by Exxon and
informed that it was the likely successful bidder is false; however, this simply raises a fact issue.