Opinion issued August 22, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01093-CV

————————————

**ALZO PREYEAR, Appellant**

**V.**

**KUMAR KANDASAMY AND ADVANCED PLATINUM SOLUTIONS, INC., Appellees**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2008-48663

**MEMORANDUM OPINION**

Alzo Preyear, Sr. ("Alzo")[1] appeals the trial court's grant of summary judgment on his quantum meruit claim in favor of appellees Kumar Kandasamy ("Kumar") and Advanced Platinum Solutions, Inc. ("APS"). We reverse and remand.

## Background

APS, formed in 2003, provides warranty and refurbishment support services to clients in the information technology industry. Kumar has been the Chief Executive Officer and majority shareholder of APS since its inception. During the time period relevant to this suit, Kumar, Clennon Preyear ("Clennon"), and Alice Preyear ("Alice"), Clennon's sister, were the shareholders of the company. In addition to being a shareholder, Clennon was Chief Operating Officer. Gijo Kavanal ("Gijo") was Company Secretary and Vice President of Information Technology.

In 2005, APS began factoring its accounts receivable with Advantage Business Capital ("ABC"), a factoring company. Under their agreement, APS assigned some of its customers' accounts receivable to ABC. Upon receipt of a customer's payment, ABC retained an administrative percentage and remitted any remainder to APS. In September 2007, ABC stopped factoring APS's accounts receivable because APS owed ABC more than $1.2 million. Consequently, ABC

---

[1] As several individuals share the same last name, we refer to them by their first names for clarity's sake.

2

began taking 100 percent of APS's customer accounts receivable to pay the outstanding balance.[2]

In October 2007, Clennon asked his brother, Alzo, a physician, to loan money to APS to enable the company to meet its financial obligations.[3]  On October 19, 2007, Alzo, Clennon, Kumar, and Gijo signed a preliminary agreement reflecting, in part, the following terms:

> It is agreed that [APS] shall transfer 65% of the company's shares and the total liabilities and its debt of the company be taken on by [Alzo].
>
> . . . .
>
> The consideration for the above stock transfer would be that [Alzo] make an Investment into Company TBD and a secured commitment of financial responsibility to [ABC] of the outstanding balance as per there [sic] records by such date as agreed by [ABC].
>
> . . . .
>
> It is agreed by all parties that the Board . . . consists of the following:
>
> | | |
> |---|---|
> | Alzo Preyear | – Chairman |
> | Clennon Preyear | – Board Director |
> | Kumar Kandasamy | – Board Director |
> | Gijo Kavanal | – Company Secretary |

---

[2]   In his affidavit, Wayne Coker, ABC's President, stated that an internal audit of APS's account revealed that APS had submitted a large number of seemingly fraudulent invoices that had not been sent to the customer and for which no work had been performed.  According to Coker, when he met with Kumar, Clennon, and Gijo, to inform them of his findings, they confessed to their knowledge of and involvement in the scheme, and promised to seek ways to pay ABC back in full.  According to Coker, ABC monitored the situation on a daily basis and was considering filing a lawsuit to collect the monies owed.

[3]   Alzo had previously loaned $80,000 to APS in 2005.

3

It is agreed by all parties that the Directors of the Company will be as follows below:

Alzo Preyear          – President
Clennon Preyear      – Vice President
Kumar Kandasamy    – Chief Executive Officer
Gijo Kavanal          – Vice President IT

The Board Directors/Directors of the company listed above shall receive an employment contract for 5 years with a Non-Compete Clause in which their remuneration and benefits shall be outlined and be no less then [sic] 5 years.

. . . .

This agreement is base[d] on the outline of a Sales and Purchase agreement. In the event that the above terms are not agreed or a breach in the above terms then this preliminary agreement is null in [sic] void.

It is agreed by all parties that if this preliminary agreement is Null In [sic] void then the initial payment of $50,000 be paid back to [Alzo] upon void of this agreement contract.

In his deposition, Alzo testified that, in addition to the $50,000 loan, he also paid APS's expenses with his personal funds from October 2007 to December 2007. He further testified that he had executed a personal guaranty agreement with ABC, thereby averting a lawsuit and allowing for reinstatement of ABC's factoring line of credit to APS.

APS contends that Alzo and ABC subsequently "cooked up a scheme" in which ABC deposited APS's factored accounts receivable into Alzo's personal bank account after ABC had taken its percentage. APS further contends that Alzo

4

kept some of the funds and wired some of APS's money back to APS. Thus, it claims, any monies deposited by Alzo into APS's account were actually monies derived from APS's own accounts receivable. APS also claims that Alzo, with Clennon's help, took money from APS via wire transfers from APS's account to Alzo's personal account.

According to APS, Kumar called a special shareholder meeting on June 20, 2008, after he learned of Alzo's and Clennon's "scam." Kumar, Clennon, and Alice attended the meeting. The minutes of the meeting state, among other things, that (1) APS's debt had increased approximately $600,000 over the last seven months, (2) the IRS had served APS with a tax lien in the amount of $387,284.62 for nonpayment of taxes, and (3) Clennon had ignored several pending lawsuits and demands against APS and, as a result of his inattention, APS had a default judgment taken against it. To obtain additional financing, the shareholders authorized the corporation to enter into an agreement with another factoring company. At the meeting, the shareholders elected Kumar, Mattan Ben-David, and Gijo as APS's directors.

On August 15, 2008, Alzo and Clennon filed suit against APS and Kumar, alleging breach of contract and violations of the Texas Business Corporation Act. In their fourth amended petition—the live pleading in this case—Alzo, Clennon, and Alice alleged causes of action for breach of fiduciary duty and the duty to

5

disclose, breach of contract, self-dealing, conspiracy, unjust enrichment, quantum meruit, theft, and conversion.

On May, 27, 2010, APS filed a motion for summary judgment as to Alzo's claims. On July 9, 2010, the trial court held a hearing on APS's motion and granted summary judgment in favor of APS on all of Alzo's claims except for his quantum meruit claim. In its motion for rehearing, APS asked the trial court to grant summary judgment as to Alzo's quantum meruit claim. In his motion for rehearing, Alzo asked the court to set aside its ruling on his contract claim on the basis that he had asserted two breach of contract claims, and APS had moved for summary judgment on only one of those claims.

On January 21, 2011, the trial court conducted a hearing on the parties' motions to reconsider. In response to the court's request, Alzo submitted additional briefing addressing his quantum meruit and breach of contract claims. In its order dated February 9, 2011, the trial court set aside its July 9, 2010 order and further ordered as follows:

> APS's Motion for Summary Judgment is GRANTED on Alzo Preyear's Quantum Meruit claim and all other claims, except the contract claim involving the Loan and Investment Agreement in the amount of $80,000 dated August 27, 2005.

On November 29, 2011, the trial court granted Alzo's motion to dismiss with prejudice the remaining contract claim against APS and all of his claims against Kumar. Alzo timely filed this appeal.

**Discussion**

In his sole issue, Alzo contends that the trial court erred in granting summary judgment on his quantum meruit claim because he presented probative summary judgment evidence showing the existence of genuine issues of material fact. APS argues that the trial court properly granted summary judgment because Alzo presented no evidence to support at least two elements of his quantum meruit claim. APS further argues that no genuine issues of material fact exist with regard to Alzo's claim, and that it is therefore entitled to judgment as a matter of law.

## A. Standard of Review

We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Miles v. Lee Anderson Co.*, 339 S.W.3d 738, 741 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In conducting our no-evidence summary judgment review, we will "review the evidence presented by the motion and response in the light most favorable to the party against whom the

summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2008) (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i). A no-evidence summary judgment will be sustained on appeal when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered by the nonmovant to prove a vital fact, (3) the nonmovant offers no more than a scintilla of evidence to prove a vital fact, or (4) the nonmovant's evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751.

Under the traditional summary-judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49. A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or

8

conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

If the summary judgment does not specify the grounds on which it was granted, the appellant must demonstrate that none of the proposed grounds is sufficient to support the judgment. *Rogers v. Ricane Enter.*, 772 S.W.2d 76, 79 (Tex. 1989). Because the trial court in this case did not specify the ground upon which it relied for its ruling, we will affirm if any theory advanced by APS in its summary-judgment motion is meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

## B. Quantum Meruit

Quantum meruit "is founded [on] the principle of unjust enrichment." *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985). Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). An action in quantum meruit is independent of any contract and is based on an implied agreement to pay for benefits rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron USA,*

9

*Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). To recover on a claim for quantum meruit, a plaintiff must show (1) he rendered valuable services, (2) for the defendant, (3) the defendant accepted his services, and (4) he rendered the services under circumstances as would reasonably notify the defendant that he expected to be paid. *Smith v. Deneve*, 285 S.W.3d 904, 915 (Tex. App.—Dallas 2009, no pet.).

In his fourth petition, Alzo alleged that APS "received the benefits of [his] services, time and equipment for [his] role in start[-] up and operation of 'APS.'" In its summary judgment motion, APS challenged the first element arguing that Alzo had presented no evidence showing that he had rendered valuable services to APS:

> Plaintiff Alzo's claim is nonsensical. . . . He was not around during the start up and admits to knowing nothing about the start up. Plaintiff Alzo did not even know the "start-up" date of APS. . . . Clearly, then, Plaintiff Alzo has no claim to be compensated for "start-up." There is no evidence that supports Plaintiff Alzo's claim that he provided services, time or equipment for the start-up and operations of APS.

The burden subsequently shifted to Alzo to raise a fact issue on the first element. TEX. R. CIV. P. 166a(i). In his amended summary judgment response, Alzo included his affidavit and the affidavits of Clennon and Wayne Coker, ABC's President, as evidence that he provided valuable services to APS. In their affidavits, Alzo and Clennon averred that Alzo had (1) executed a personal guaranty agreement to forestall ABC, APS's largest creditor, from filing suit

10

against APS due to APS's more than $1.2 million debt owed to ABC, and (2) used his personal funds to pay APS's outstanding bills, loan money to APS, and make several purchases for APS. In his affidavit, Coker attested that Alzo had executed a personal guaranty agreement which allowed ABC to continue working with APS. In addition, Coker stated that "[i]n the time period Alzo Preyear was involved in financially supporting APS, roughly from September 2007 to June 2008, APS'[s] outstanding debt with ABC was reduced from $1,204,622.53 to being paid off in full on July 1, 2008." In his deposition, Alzo testified that he paid APS's debt and operating expenses with his personal funds from late 2007 to early 2008, and that he signed the personal guaranty agreement for ABC in January 2008. As such, Alzo has produced more than a scintilla of evidence demonstrating that he provided valuable services or materials to APS as required to establish a claim in quantum meruit. *See King Ranch*, 118 S.W.3d at 751. Because Alzo met his burden under Rule 166a(i), APS was not entitled to a no-evidence summary judgment on this ground.

We now consider whether APS demonstrated that it is entitled to summary judgment on traditional grounds. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548. In response to Alzo's claim that he provided services to APS when he executed a guaranty agreement to avert a lawsuit, APS argues that Alzo has never produced the executed guaranty agreement. Although the record contains only an

unsigned copy of the guaranty agreement, Alzo testified at his deposition that he had signed the guaranty agreement in January 2008, and the affidavits of Alzo, Clennon, and Coker also attest to an executed agreement. Taking the non-movant's evidence as true, we conclude that the evidence is sufficient to establish that Alzo signed the guaranty agreement. *See Valence Operating Co.*, 164 S.W.3d at 661 ("In deciding whether there is a disputed material fact precluding summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in favor of the non-movant.").

APS also argues that, even assuming Alzo executed the guaranty agreement, this act did not constitute a "service" for APS because Alzo only did so as part of his investment in the company and to further the scheme with ABC. APS claims that because Alzo executed the agreement only to gain a business advantage and not for APS's benefit, he is precluded from recovering under quantum meruit.

In support of its argument, APS relies on *Peko Oil U.S.A. v. Evans*, 800 S.W.2d 572 (Tex. App.—Dallas 1990, writ denied) and *Richter v. Wagner Oil Co.*, 90 S.W.3d 890 (Tex. App.—San Antonio 2002, no pet.).[4] In those cases, the

---

[4] In *Evans*, the plaintiff oil company sued to recover in quantum meruit for services it performed in alerting a second oil company to a lease acquisition and drilling opportunity. *See Peko Oil U.S.A. v. Evans*, 800 S.W.2d 572, 575 (Tex. App.—Dallas 1990, writ denied). In *Richter*, an entrepreneur and his company brought a quantum meruit claim for information they had provided to the defendant oil

courts held that "an expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim." *Richter*, 90 S.W.3d at 895; *Evans*, 800 S.W.2d at 576. Both cases, however, are inapposite to the present case. There, the courts decided the cases on the fourth element, that is, whether the defendants were placed on notice that the plaintiffs were expecting compensation for the information provided. *See Richter*, 90 S.W.3d at 895; *Evans*, 800 S.W.3d at 575. Here, APS challenged only the first element.[5] Further, the *Richter* court found that the plaintiffs' evidence did, in fact, raise a genuine issue of material fact regarding whether they had provided a valuable "service." *See* 90 S.W.3d at 895.[6]

Taking as true all evidence favorable to the nonmovant, as we must, we conclude that the evidence is sufficient to raise a genuine issue of material fact regarding whether Alzo provided APS with a valuable service in executing the

---

company regarding the likely successful bidder for oil reserves. *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 894 (Tex. App.—San Antonio 2002, no pet.).

[5] APS argues on appeal that Alzo's quantum meruit claims fails on the fourth element. However APS did not challenge the fourth element as a ground for summary judgment, and therefore, we do not consider it on appeal. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Klentzman v. Brady*, 312 S.W.3d 886, 908 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

[6] In *Evans*, the court referred to the plaintiff's "alleged service" and "preliminary services," arguably suggesting that it had presented evidence of a valuable service. *See* 800 S.W.2d at 575.

guaranty agreement with ABC.[7] *See Nixon*, 690 S.W.2d at 548–49 ("In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor."). APS was not entitled to summary judgment as a matter of law under Rule 166a(c). As such, we conclude that the trial court erred in granting summary judgment to APS on Alzo's quantum meruit claim. We sustain Alzo's sole issue.

## Conclusion

We reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.


                                        Jim Sharp
                                        Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

---

[7] We note that APS does not address Alzo's claim that he rendered a valuable service to APS in using his personal funds to pay APS's outstanding bills, loan money to the company, and make several purchases for APS.