# Fourth Court of Appeals
## San Antonio, Texas


## MEMORANDUM OPINION

No. 04-14-00163-CV

**AAA FREE MOVE MINISTORAGE L.L.C.**,
Appellant

v.

**BRIGHAM LIVING TRUST**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-01363
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:         Sandee Bryan Marion, Chief Justice
                 Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  March 11, 2015

AFFIRMED

This is an appeal from a summary judgment in favor of appellee, which dismissed all of appellant's claims against appellee with prejudice. Because we conclude appellee conclusively established its entitlement to a traditional summary judgment, we affirm the trial court's judgment.

### BACKGROUND

The underlying lawsuit arises from appellant AAA Free Move Ministorage LLC's purchase of real property from appellee Brigham Living Trust. At the time, Brigham had communication tower leases on the property and a lease with OIS Investments, Inc. OIS Investments operated,

out of the only building on the property, an official inspection station to inspect cars pursuant to Texas vehicle inspection laws. AAA and Brigham entered into a Commercial Real Estate Contract ("the contract") on June 3, 2008; and the sale closed on September 29, 2008.

AAA later tried unsuccessfully to evict OIS Investments, relying on a six-month termination notice provision in the OIS Investments lease. However, before the six-month period elapsed, OIS Investments sued AAA for a declaratory judgment that AAA did not have the right to terminate the lease. During the eviction proceeding, OIS Investments tendered an estoppel letter relating to an extension of the OIS Investments lease.

AAA then brought the underlying suit against Brigham in which AAA raised claims for violations of the DTPA and breach of contract, and seeking damages, in part, for the expenses AAA incurred attempting to terminate the OIS Investments lease. AAA alleged Brigham did not make a full disclosure about the leases on the property. AAA alleged Brigham represented that the OIS Investments lease could be terminated upon six months' notice. AAA alleged that after the sale, Brigham "came up with documents . . . that showed some questions of fact as to the nature of the extension of" the OIS Investments lease. AAA also contended Brigham should have disclosed "adverse information . . . related to [OIS Investments'] belief that the lease between [Brigham] and tenant OIS could not be terminated in accordance with the terms of the Lease and the documentary reasons why it felt so before closing."[1] Brigham filed a traditional and no-evidence motion for summary judgment on several grounds, which the trial court granted without stating its grounds. AAA now appeals.

---

[1] AAA also alleged Brigham represented that communication towers, which were on the property, "were on long term contracts that were already cashed out and one of the 2 towers had reverted back to" Brigham; however, the tower leases produced by Brigham "were silent as to the lack of the reversion." AAA's breach of contract claim mentions only the OIS Investments lease; it does not encompass the communication tower contracts.

## STANDARD OF REVIEW

Although the Texas Supreme Court has approved of filing combination summary judgment motions, the better practice is to clearly delineate which type of summary judgment is being sought. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004). In this case, the motion bears the title "Traditional and No Evidence Motion for Summary Judgment;" however, it does not clearly distinguish between the two types of motions. Typically, we would construe the grounds asserted by Brigham as intended to assert a "no-evidence" ground only if it specifically states AAA failed to prove a specific element of its cause of action. *See* TEX. R. CIV. P. 166a(i) ("The motion must state the elements as to which there is no evidence."). We construe grounds lacking those words as "traditional" grounds for summary judgment. Here, the only claim that Brigham addresses as a failure to prove a specific element is with regard to AAA's DTPA claim, and that claim has been non-suited with prejudice. Brigham's motion for summary judgment as to AAA's only remaining claim—for breach of contract—does not satisfy the requirements of a no-evidence motion; therefore, we construe it as a traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a(c).

We review the grant of a traditional summary judgment de novo. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.–San Antonio 2009, no pet.). A party moving for traditional summary judgment has the burden of establishing that no material fact issue exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the non-movant, indulging all reasonable inferences in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

## BREACH OF CONTRACT

To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a valid contract; (2) performance or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.). When, as here, a defendant moves for a traditional summary judgment, the defendant has the burden to conclusively disprove at least one of the essential elements of the plaintiff's cause of action. *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). Here, Brigham's motion for summary judgment challenged only the third element—whether it breached the contract.

In its motion for summary judgment, Brigham first argued AAA waived its complaints about the OIS Investments lease. Brigham alleged the contract made clear what it was required to disclose to AAA and the time period in which AAA had to object and terminate the contract. Brigham alleged it provided all necessary lease documents, which AAA had adequate time to review. Brigham asserted AAA's failure to object constitutes a waiver of its complaints.

The premise of Brigham's argument is that it provided AAA with two "competing" OIS Investments leases. The first lease, from Brigham's files (the "Brigham copy"), was a copy of the April 1, 1991 Ground Lease Agreement with OIS Investments, attached to which was a 2002 Modification & Extension of Ground Lease Agreement. The ground lease contains hand-written changes to the termination provision, which were initialed by both David and Mary Jane Brigham as the lessors, but not by anyone for OIS Investments as lessee.[2] The modification and extension

---

[2] The following language in the termination provision was lined through: "In addition Lessor upon three months written notice to Lessee, can terminate this Lease under the following buyout schedule: . . . Lessee upon receipt of the appropriate amount [of the buyout] shall vacate the premises on the last day of the third (3rd) month thereafter." In its place, the following was hand-written: "[unreadable] of party, Lessor will give Lessee six (6) months['] notice to terminate the lease and vacate the property. Lease termination will involve no cost to Lessor."

does not mention how the lease may be terminated; instead, it contains hand-written changes to the rental amounts. The second lease, from OIS Investments' files (the "OIS copy"), was a copy of the ground lease and the modification and extension. However, the OIS ground lease does not have any hand-written interlineations to the termination provision. In its motion for summary judgment, Brigham argued these two "competing" ground leases—one with interlineations and one without—gave AAA notice that there was or could be a dispute as to which lease applied.

Brigham relies on several provisions of the contract for its arguments. First, Brigham points to the provisions regarding the title commitment and the contract provision regarding AAA's ability to object. The contract required Brigham (as seller) to furnish AAA (the buyer) "a commitment for title insurance (the commitment) including legible copies of recorded documents evidencing title exceptions." The contract allowed AAA to object to exceptions to any title exceptions. During the due diligence period, the contract required Brigham to deliver copies of all "current leases pertaining to the Property, including any modifications, supplements, or amendments" in Brigham's possession. With regard to any written leases that Brigham was required to furnish under the contract, each lease had to be "in full force and effect according to its terms without amendment or modification that is not disclosed to [AAA] in writing." Brigham was required to disclose in writing "any modifications, amendments, or default by landlord or tenant under the leases."

One of the listed exceptions from title coverage under the commitment was coverage for any "loss, costs, attorneys' fees, and expenses resulting from . . . [r]ights of tenants, as tenants only, under any and all unrecorded leases or rental agreements . . . ." The contract stated AAA had twenty days from receipt of the commitment and "copies of any documents evidencing title exceptions" to object in writing to matters disclosed in the items if:

(a) the matters disclosed constitute a defect or encumbrance to title other than those permitted by this contract or liens that [Brigham] will satisfy at closing or [AAA] will assume at closing; or

(b) the items show that any part of the Property lies in a special flood hazard area . . . .

The contract allowed, but did not obligate, Brigham to cure any objection raised by AAA. Finally, the contract stated: "[AAA's] failure to timely object or terminate . . . is a waiver of [AAA's] right to object except that [AAA] shall not waive the requirements of Schedule C to the commitment."[3]

Second, Brigham argued AAA failed to terminate under a "feasibility" clause in the contract, which provided as follows: "[AAA] may terminate this contract for any reason within 90 days after the effective date by providing [Brigham] with written notice of termination. If [AAA] does not terminate within the time required, [AAA] accepts the Property in its present 'as is' condition with any repairs [Brigham] is obligated to complete under this contract." Brigham argued that because AAA did not terminate the contract, it accepted the property subject to the leases it was provided.

Finally, Brigham asserted that the estoppel letter relied on by AAA did not "affect" any lease. Under a section entitled "Material Facts," the contract required Brigham to disclose in writing whether any "other matters that affect any lease" "exist at the time [Brigham] provides the leases to [AAA] or subsequently occur before closing." Brigham argued the estoppel letter did not "affect" any lease with OIS Investments because the letter was not signed by Brigham and did not satisfy the statute of frauds.

There does not appear to be any dispute that AAA received both the Brigham copy (with interlineations) and the OIS Investments copy (without interlineations) of the ground lease. In its

---

[3] Schedule C is not pertinent to this appeal.

response to Brigham's motion for summary judgment, AAA alleged Brigham's admission that it did not provide the estoppel letter proves breach of contract, and Brigham's knowing withholding of the letter "for its own purposes," absolves AAA of any waiver.

Brigham's summary judgment evidence included both signed and unsigned copies of a "Tenant Estoppel Letter"; the signed letter is dated August 13, 2003 and is signed by OIS Investments' president. The estoppel letter states: "No modifications have been made to said lease since the original execution of same, except as follows: lease is a modification and extension of lease signed April 1, 1991." As to an "admission" by Mary Brigham, in her own affidavit she stated:

> I did not provide this Estoppel Letter to [AAA] as it did not contain any dispute to the lease or termination rights, nor did it give any indication the OIS would breach the termination provisions of the OIS Lease. . . . Brigham did not have a complete copy of the Estoppel Letter in its file. Brigham's file had an unsigned copy only. OIS produced one at the deposition of David Brigham, so I have seen a completed copy. There is no indication in the completed copy of the Estoppel Letter that OIS disagreed about the existence of the termination clause or that it was going to breach their lease on the point.

AAA's summary judgment evidence includes the affidavit of AAA's lawyer and principal, Greg Van Cleave, in which he stated as follows:

> I also personally had a quite short discussion with Ms. Brigham during the due diligence phase of the transaction. This was after her son David and I spent 30 minutes visiting in my office. I do not remember the entirety of the discussion word for word but do recall she told me that she called Ms. Barnes [OIS Investment's president] to get a copy of the Exhibit to the lease. This was holding up the closing. I do not recall what exactly was said but she asserted that OIS was not happy about their leaving the property. During the discussion with her, I remember looking at the lease she provided to me through her attorney. *I should have been provided the estoppel letter with the lease. Had I been; I would have noticed the problem with the termination clause and we would not have bought the property.* There were several other properties available. [Emphasis added.]

The question here is whether Brigham satisfied its burden to conclusively disprove whether it breached the contract. We conclude it did so. AAA received both copies of the leases. One

copy contained hand-written changes to the termination clause and the other did not. AAA does not contend it did not have time to review the competing leases. Instead, AAA contends it would have noticed the problem with the termination clause if it had been provided with the estoppel letter. However, the estoppel letter does not raise a fact issue on whether Brigham breached the contract because the copies of the two leases indicated a "problem," and the estoppel letter does not address the terms under which the lease could be terminated. The statement in the estoppel letter that "no modifications had been made to said lease," except for the modification of the lease extension, adds no new information that AAA did not already have by virtue of its receipt of the two competing leases. Therefore, under the terms of the contract, AAA waived its complaints because it had both leases, the two leases viewed together indicated a possible exception to title coverage, and AAA did not object.

## CONCLUSION

We conclude Brigham conclusively established its entitlement to a traditional summary judgment on AAA's breach of contract claim; therefore, we affirm the trial court's judgment.


Sandee Bryan Marion, Chief Justice